### United States *v.* Bain.

*(Circuit Court, D. Maine.   September, 1880.)*

1. Shipping Articles—Description of Voyage—Rev. St. § 4520.— Shipping articles, signed by a seaman at Philadelphia, described the voyage as "from that port to Portland, Maine; thence to some one or more ports east, if required by the master, and back to a western port of discharge. Term not to exceed two months." *Held*, under section 4520 of the Revised Statutes, that they were sufficiently precise and definite to be obligatory upon the parties.

   *Thompson* v. *The Oakland*, 4 Law Rep. 301.

2. Coastwise Vessels—Act of June 9, 1874, c. 260—Act of June 7, 1872, (Shipping Commissioners' Act,) Rev. St. Title 53.—The act of June 9, 1874, c. 260, enacted " that none of the provisions of the act of June 7, 1872, (shipping commissioners' act,) should apply to sail or steam-vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts." *Held*, that the effect of this language was to strike from the Revised Statutes, (title 53,) every provision therein which was taken from the act of 1872 relative to such coastwise vessels.

3. Coastwise Voyage—Seaman—Shipping Articles.—*Held*, therefore, that shipping articles for a coastwise voyage need not be signed by a seaman in the presence of a commissioner, master, consignee, or owner.

4. Same—Same—Desertion—Rev. St. Title 53, c. 7.—*Held, further*, that chapter 7, of title 53, of the Revised Statutes, concerning " offences and punishments," was thereby rendered inapplicable to the crews of coasting vessels, and therefore that a seaman was not liable to an indictment for desertion, although legally shipped for a coastwise voyage, and bound by the articles to complete the voyage.—[Ed.

Motion for New Trial.   Indictment.

Fox, D. J. The defendant, one of the crew of the schooner J. S. & S. C. Adams, was indicted for desertion at this port.

The articles, which were signed by him at Philadelphia July 19th, described the voyage as "from that port to Portland, Maine; thence to some one or more ports east, if required by the master, and back to a western port of discharge. Term not to exceed two months." The vessel arrived at this port, discharged her cargo, and was about to proceed to the Kennebec river for ice, on the thirty-first of July, when the defendant deserted. The defence was placed on two grounds—*First*, that the description, in the articles, of the voyage was not sufficiently definite and specific, so as to bind the crew to its performance; and, *secondly*, that the articles were null and void, not having been signed by Bain in the presence of the shipping commissioner, master, consignee, or owner. These objections were overruled by the district judge, and, a verdict of guilty having been rendered, the defendant now moves for a new trial.

The Revised Statutes, § 4520, declare that every master of a vessel of over 50 tons burden, bound from a port in one state to a port in any other than an adjoining state, shall, before he proceeds on his voyage, make an agreement, in writing or in print, with every seaman, declaring the voyage or term of time for which such seaman shall be shipped. This provision is taken from the act of 1790, and has frequently been passed upon by courts of admiralty. These articles describe the voyage as from Philadelphia to Portland, thence to one or more ports east, if required, and back to a western port of discharge—the term not to exceed two months. This description bears a strong similarity to that found in *Thompson* v. *The Oakland*, 4 Law Rep. 301, in which Judge Sprague held that articles describing a voyage as "from Boston to one or more ports south, thence to one or more ports in Europe, and back to a port of discharge in the United States," were sufficiently precise and definite to be obligatory upon the parties, and such, we hold, were the present articles.

At the trial, the counsel in defence relied with great confidence on the opinion in *U. S.* v. *Smith*, 95 U. S. 536, insisting that it was conclusive against the validity of defendant's shipment; and, upon the present motion for a new trial, remarks of Mr. Justice Clifford in that case are urged upon us as decisive, and should control our conclusions upon this point. His language is as follows: "Seamen, however, for such a voyage (coastwise) must be regularly shipped, and the master, before he proceeds upon the voyage, must make with each seaman he carries to sea, as one of his crew, an agreement in writing or in print, in the manner and form required by the act. Voyages of this kind, not being within the operation of the body of section 12, act of June 7, 1872, the agreement is not required to be signed in the presence of a shipping commissioner; instead of that, the owner, consignee, or the master of a ship, so far as the ship is concerned, may himself, in such a case, perform the duties of such a commissioner; but third persons possess no such authority in any case."

Smith's case was before the supreme court of the United States, on a certificate of division of opinion from the circuit court for the Massachusetts district, upon the question "whether the act of 1872 applies to the shipping of seamen on vessels engaged only in and for voyages coastwise between Atlantic ports." This question was answered in the negative. The decision, therefore, of the court, apparently, is not in accord with the foregoing quotation from the opinion of Mr. Justice Clifford. If "the act does not apply to such voyages," the regulations touching the shipment of the crew, as found in the act, are not applicable, any more than any of the other provisions contained in the act.

The ruling at the trial was in conformity with the decision itself—was based thereon—and was in accordance with what is understood to be the uniform practice in this circuit. It has never been held that the provisions as to shipments of crew on foreign voyages were applicable to coasting voyages. As stated by *Lowell*, J., in *The T. W. Haven*, 3 FED. REP. 350, decided in July last:

"The shipping act required shipments and discharges of seamen for long foreign voyages to be conducted under the supervision of shipping commissioners; as to the contracts of coasting and West Indian voyages, it left the act of 1790 to deal with them."

The ruling was made upon the provisions of the act of 1872, as found incorporated into the Revised Statutes, the attention of the court at the trial not having been called to the act of June 9, 1874. This act, however, was then in force, and we are of the opinion that it is unnecessary for us to determine the true construction of so much of LIII. as is found in the Revised Statutes relating to coasting voyages, and which were included in the act of 1872; as, by the act of 1874, vessels upon such voyages are entirely excluded from the operation of all provisions of this title heretofore contained in the shipping act.

By act of Congress approved June 22, 1874, the Revised Statutes took effect as of December 1, 1873, but by section 5601 it was declared that acts passed since that date are to have full effect as if passed after the enactment of the Revision, and, "so far as such acts vary from or conflict with any provision contained in said Revision, they are to have effect as subsequent statutes, and as repealing any portion of the Revision inconsistent therewith." The act of June 9, 1874, *c.* 260, enacted "that none of the provisions of the act of June 7, 1872, (Shipping Commissioners' Act,) should apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts," etc.

This language is so broad and comprehensive that, in our opinion, its effect must be to strike from the Revised Statutes every provision therein which was taken from the act of 1872 relative to such coastwise vessels; and their operation must be restricted to vessels sailing on long foreign voyages, or from the Atlantic to the Pacific coasts. All the regulations found in the act of 1872, and transferred to the Revised Statutes, relative to the shipment of crews, which might otherwise, perhaps, be applicable to coastwise voyages, are no

longer in force, and the jury were correctly instructed that the shipment of the defendant on this voyage was valid and binding, although not made in the presence of a commissioner, master, consignee, or owner. All that is now required for such contracts is that they shall conform to so much of the act of 1790 as is re-enacted in this title of the Revised Statutes, and the crew are bound by such engagements.

There is no limitation to the operation of the act of 1874; by it, every provision found in the Revised Statutes respecting coasting vessels, which were first enacted in the act of 1872, are repealed, and the result therefore must be that all such provisions, some of which are of a most just and salutary character, as, for instance, the allowance of wages to the crew to the time of loss in case of shipwreck, are no longer in force. Among others thus repealed are those found in chapter 7 of this title, concerning "offences and punishment." By these provisions, which were a re-enactment of section 51 of the act of 1872, the crew were rendered liable to an indictment in case of desertion. We are not aware of any other act of congress which punishes desertion criminally, but under our construction of the act of 1874 we are compelled to hold that chapter 7, of title 53, is no longer applicable to the crews of coasting vessels. The result, therefore, is that this defendant, although legally shipped and bound by the articles to complete the voyage, was not liable to an indictment for desertion.

The verdict must therefore be set aside and a new trial granted.