## THE BELVEDERE.

(District Court, N. D. California. March 1, 1900.)

### Nos. 11,695, 11,696.

1. SEAMEN—SUIT FOR WAGES—RELEASE.

Seamen who, after joining in a libel for damages, settle their claims, and execute a release, on receiving a small payment and a cancellation of their indebtedness to the ship for advances and merchandise, without fraud or duress, cannot impeach the consideration for such release, and the suit as to them will be dismissed.

2. SAME—DETENTION BEYOND TERM OF SERVICE.

Libelants shipped as seamen on a whaling ship for a voyage not to exceed one year, and were to receive a share of the proceeds as compensation. During the year the ship became fast in the ice, and was not released until some time after the end of the year. After being released, the master, against the protest of the men, went on another cruise. *Held,* that the detention of the ship while imprisoned in the ice, and while afterwards taking up the members of her crew, who had been sent on shore while she was so imprisoned, was an incident to navigation in that latitude, for which the ship was not liable, but that for the time occupied by the subsequent cruise, and after it became the duty of the ship, under the articles, to return libelants to the port of discharge, she was liable to them for damages in an amount sufficient to compensate them for their loss of time.

In Admiralty. Suits by seamen to recover damages for breach of contract.

D. T. Sullivan, for libelants.

H. W. Hutton, for claimants.

DE HAVEN, District Judge. This is an action by seamen to recover damages for the alleged breach of a contract under which they shipped on the bark Bel\ .dere for a whaling voyage from the port of San Francisco to the North Pacific and Arctic Oceans, or elsewhere, as the master might direct, and return, the voyage not to exceed 12 months. The libelants were to receive as compensation for their services a stated share of the proceeds of the voyage. The breach alleged is that the voyage was protracted against the consent of libelants beyond the term named in the shipping articles, and is set forth in the libel in these words:

"That, by reason of the wrongful and tortious acts and misconduct of the said Millard, the master of the said Belvedere, * * * all of said libelants were held to service on board of said vessel for a period of about eight months after their legal term of service had expired, against the will and without the consent of said libelants, and in utter disregard of their rights as seamen on board of said vessel, whereby each and every one of said libelants hath sustained damages in the sum of five hundred (500) dollars."

It appears from the evidence that the Belvedere left San Francisco, March 8, 1897, on the voyage referred to, and on or about September 21st of that year was caught in the ice near Sea Horse Islands, in the Arctic Ocean, and was not released therefrom until some time in the month of July, 1898, when she immediately proceeded to Port Clarence, Alaska, for the necessary purpose of tak-

ing on coal. She arrived at that place on the 4th of August, 1898, and remained there until the 9th of the same month. When the vessel reached Port Clarence, those of the libelants who were on board made a demand upon her master that he should enter into a new contract to pay them a definite and fixed sum of wages for the future, and also to cancel their existing slop-chest account with the ship, or that they should be returned to San Francisco, their term of service under the articles signed by them having expired. The master would not enter into the contract proposed by the libelants for their continued service as seamen, and also refused to return them to San Francisco at that time. From Port Clarence the Belvedere went to Cape Smythe, for the purpose of getting certain members of her crew who had been sent there the previous winter for sustenance and greater comfort while she was imprisoned in the ice, and, having taken these men on board, the vessel on August 18, 1898, started upon another cruise in the Arctic Ocean, and there remained cruising for whales until October 15, 1898, when she proceeded to San Francisco, arriving at that port on the 6th of November, 1898.

1. In addition to the facts above stated, it was also shown by the evidence that after the commencement of the action, and before the trial, some of the libelants, in consideration of the payment of a small sum in each case, and the cancellation of their indebtedness to the vessel for advances and merchandise, settled with the claimants, and executed a release of all their claims against the Belvedere and her owners on account of the matters set forth in the libel. The settlement in each case was made without the knowledge or consent of the proctor for the libelants, but there is nothing in the evidence to warrant a finding that the settlements were obtained by fraud or duress upon the part of the claimants, nor can the libelants be heard to allege that the consideration given to them was grossly disproportionate in amount to the claims which they released; that is to say, they cannot, for the purpose of defeating such settlements, be permitted now to allege that the ship's accounts against them were of no value, and that the release by the claimants of the amount due on these accounts was not a sufficient consideration to uphold such settlements. It must therefore be held that those of the libelants who executed such releases are not entitled to recover in this action.

2. The refusal of the master of the Belvedere to return the libelants to San Francisco after the expiration of the time for which they had shipped was a breach of the contract under which they shipped as seamen, and for this breach of contract the libelants who have not released their claims are entitled to recover damages. The William Jarvis, 1 Spr. 485, Fed. Cas. No. 17,697. See, also, Allen v. Hitch, 2 Curt. 147, Fed. Cas. No. 224; The Minerva, 1 Hagg. Adm. 347. As to the measure of damages, the libelants are entitled to recover such sum as will compensate them for the time they were unnecessarily detained beyond their term of service. The term named in the articles expired on March 8, 1898, but at that date the vessel, without fault of her owners, was imprisoned in the ice. The detention of the libelants from this cause until July, 1898, was an inci-

dent to navigation in that latitude, and must be attributed to the act of God, for which the claimants are not liable to respond in damages. Burdett v. Williams (D. C.) 27 Fed. 116. This must be so, as the shipping articles, properly construed, only bound the owners of the ship to exercise good faith and reasonable diligence to complete the voyage within 12 months. So, also, the libelants are not entitled to recover for the time necessarily consumed in going from Port Clarence to Cape Smythe for the purpose of getting those of the crew who were sent there for comfort and sustenance while the vessel was ice bound. It was the duty of the master of the Belvedere to again take these me i on board, but when this was done there should have been no further delay in returning with or sending the libelants to San Francisco, and the subsequent cruise in the Artic Ocean was in violation of the shipping articles, which in express terms only bound the libelants to the service of the ship for a voyage not exceeding one year. Nearly two months were consumed in this subsequent cruise, and for this detention and loss of time the libelants are entitled to recover compensation in damages. It follows from what has been said that the libel will, as to the libelants John O'Keefe, James Coreah, Joseph Ulmer, Stephen Turner, John Barnes, Daniel McFarland, John Fullerton, and Joe Gomez be dismissed, and there will be a decree in favor of the other libelants for damages in the sum of $70 each, and costs of suit.