## BELYEA v. COOK.

(District Court, N. D. California. April 6, 1908.)

### Nos. 13,611, 13,612, 13,613, 13,618, 13,619.

1. SEAMEN—CONTRACT FOR SERVICE—TERMINATION OF VOYAGE.
  Libelants signed in San Francisco for a whaling voyage to the Arctic Ocean on stated lays; the voyage not to exceed 36 months. On the way north the vessel broke a shaft and was obliged to return to San Francisco for repairs, having been away but about a month. *Held*, that the voyage was not terminated on such return, and that the refusal of the master to permit libelants to there leave the vessel, authorized by the shipping articles during the voyage, did not entitle them to treat the contract as rescinded and to recover on a quantum meruit for the remainder of their term of service.

2. INFANTS—CONTRACT BY MINOR—DISAFFIRMANCE.
  Seamen, who were minors when they signed shipping articles, may disaffirm the contract and recover the reasonable value of the services rendered, regardless of the contract terms.
  [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Infants, §§ 149–160.]

3. SEAMEN—MISTREATMENT BY MASTER.
  Assaults made by a master upon seamen or their confinement by him in unnecessarily cruel positions are violations of their personal rights for which both the master and vessel are liable in damages.

4. SAME—RIGHTS AND DUTIES AFTER EXPIRATION OF TERM OF SERVICE—ICE-BOUND VESSEL.
  Where, at the time of the expiration of the contract term of service of seamen on a whaling voyage to the Arctic Ocean, the vessel was icebound without fault of the master or owners, they were not thereby released from the obligation to perform their ordinary duties as seamen until they could be taken or sent to the port of discharge, and the master was justified in placing them in irons on their refusal to perform such ordinary duties, but they could not be required to resume the business of whaling after the vessel was released, and the confinement in irons of one of them because of his refusal to do so entitled him to damages.

5. ESTOPPEL—RELEASE—INVALIDITY.
  A release signed by a seaman on leaving the vessel while in the Arctic Ocean before her return to the port of discharge, where there was no settlement with him for his services, did not estop him from maintaining an action therefor or from recovering damages for mistreatment by the master.

In Admiralty.

F. R. Wall, for libelants.

H. W. Hutton, for claimants and defendants.

DE HAVEN, District Judge. These actions were consolidated and tried together. All of the libelants, except Bredesen, in March, 1903, shipped on the Bowhead for a whaling voyage in the Arctic and Pacific Oceans, upon stated lays. The voyage was not to exceed 36 months. The libels allege that the Bowhead was not supplied with lime juice or other anti-scorbutics, that the medicine chest was otherwise insufficiently supplied, and that the master failed to give the libelants, during the voyage, their proper share of the food on board the vessel. The vessel sailed on her voyage on or about March 14, 1903, and on April 3d, following, while in the vicinity of Dutch Harbor, broke her shaft and was compelled to return to San Francisco for repairs, where she arrived on April 17th. The libels allege that when the vessel arrived in the port of San Francisco all of the libelants, except Bredesen, elected to rescind their contract of shipment, and, notwithstanding such rescission, the master refused to permit any of the libelants, except Bredesen, to leave the ship. The libelants claim that upon the foregoing facts the shipping articles, which they signed, are not binding upon them, and that they are entitled to recover upon a quantum meruit, for the whole time they performed service on the Bowhead.

The libelants Anderson, Belyea, Muller, Griffith, Castel, and Graugaard, in addition to the matters above stated, base their claim to recover wages, upon quantum meruit, upon the ground that they were minors at the date of their shipment as seamen. Certain of the libelants also claim damages for personal assaults made upon them by the master and other officers of the Bowhead, and also for having been wrongfully placed in irons.

1. The testimony is voluminous and is sharply conflicting on many material questions. It is not my purpose to review the conflicting evidence or do more than state the conclusions which I have reached.

The allegations of the libel which charge that the Bowhead was insufficiently supplied with anti-scorbutics and other medicines, and that libelants did not receive their share of the food on board of the vessel, are not sustained by the evidence, and it is therefore unnecessary to determine whether, if there had been such a breach of the obligations of the vessel, the libelants would have the right to treat the contract of shipment as rescinded.

It is argued that when the Bowhead returned to San Francisco, for repairs, the voyage, for which libelants shipped, was then ended, and that their after service upon said vessel was in the nature of involuntary servitude, for which they are entitled to recover, upon quantum meruit. There is no merit in this contention. The voyage, for which libelants shipped, was not ended when the vessel returned to San Francisco for repairs, and, if it be a fact that the libelants then gave notice of their desire and intention to abandon her, the refusal of the master to permit them to do so does not entitle them to treat the contract as rescinded. The master had the right, in the exercise of a reasonable discretion, to insist upon their remaining on the vessel while she was undergoing repairs, in the harbor of San Francisco. The shipping articles obligated the seamen "not to go out of said vessel, or aboard any other vessel, or be on shore under any pretense whatever, until the aforesaid voyage be ended, and the vessel discharged of her load-

ing, without leave first obtained of the captain or commanding officer on board."

2. Charles S. Anderson, John A. Belyea, and Fred Griffith were minors when they signed the shipping articles, Anderson and Griffith being of the age of 16 years each, and Belyea 17 years and 5 months, and there is nothing in the evidence which would justify the court in holding that they are estopped from asserting their right to disaffirm the contract of shipment and to recover the reasonable value of their services. Burdett v. Williams (D. C.) 30 Fed. 697; The Topaz (D. C.) 44 Fed. 631.

3. The libelant Charles S. Anderson asks for damages on account of alleged personal assaults, made upon him by the master, Cook. The master admits that he assaulted him on one occasion, "stood him up and cuffed his ears slightly for his insolence." I think, however, the evidence not only shows that Anderson was assaulted upon the occasion just referred to, but also at another time, by the master, and while I have no doubt that the degree of punishment inflicted upon him, upon these occasions, is very greatly exaggerated by the libelant, still the assaults were entirely unjustifiable and a violation of his personal rights.

4. The evidence also shows that the master of the Bowhead, on or about the 3d day of June, 1904, at Herschel Island, assaulted the libelant Belyea by kicking him. Belyea was not much injured by the assault, but still the act was unjustifiable and committed in wanton disregard of his personal rights, and for that assault he is entitled to recover.

5. The libelant Carl Faber claims damages on account of various alleged assaults made upon him by the mates and the master, at different times, and he further alleges that on or about June 25, 1903, the master placed iron handcuffs on him and tied him to a stanchion in the main hatch, with his hands behind him, and that while he was thus handcuffed and tied the master struck him in the face with his clenched fist, several times, with great force and violence, and that he was confined in this manner, on bread and water, for a period of two days. The evidence shows that this libelant was, upon two or three occasions, struck and beaten by the mates of the Bowhead; but this does not appear to have been done with the consent of the master, except, perhaps, on one occasion, when the master witnessed the assault. The evidence, however, shows that in March, 1905, the master not only placed him in irons and confined him in the main hatch, but that while thus confined he was tied to a stanchion with a rope, with his hands above his head. The master denies that Faber was tied with his hands above his head, but the testimony of Faber, and other members of the crew, in support of the fact, is in my opinion corroborated by the following entry in the Bowhead's log book, under date of March 5, 1905.

"Sergeant Fitzgerald, of the N. W. M. P. came on board, at request, or on complaint of some of the crew that said Faber was being tortured. Fitzgerald looked at him and said he saw no signs of torture, but said we might give him a more comfortable position. Faber was changed then to a sitting position."

It may be assumed that the master was justified in placing Faber in irons, at that time; but in making him fast to a stanchion, with

his hands above his head, he was guilty of unnecessary cruelty, for which both he and the ship are liable.

6. Certain of the libelants also claim damages on account of their having been put in irons and confined in the engine room and the forehold of the vessel, on March 22, 1906. The Bowhead was at this time lying at Herschel Island, icebound, and my conclusion, from the evidence, is that the master was justified in placing them in irons at that time because of their refusal to perform their ordinary duties as seamen. Although the voyage had been prolonged beyond the period of three years, the libelants were not thereby released from their obligations as seamen, under the circumstances appearing here. It is true that the term of service, named in the shipping articles, expired on March 16, 1905; but at that date the vessel was, without fault of her master or her owners, imprisoned in the ice, and the voyage, for which libelants shipped, was not ended, and they were bound to obey all the lawful orders of the master in and about the vessel while she was thus imprisoned in the ice, under the rule declared in The Belvedere (D. C.) 100 Fed. 498, in which case it was said:

"The terms named in the articles expired on March 8, 1898, but at that date the vessel, without fault of her owners, was imprisoned in the ice. The detention of the libelants from this cause until July, 1898, was an incident to navigation in that latitude, and must be attributed to the act of God, for which the claimants are not liable to respond in damages."

The claim of libelants that they were put in irons, at that time, because they would not promise to whale during the season of 1906, I do not think is sustained by the evidence. The whaling season does not commence, in those waters, before July, and it is not reasonable to suppose that they were put in irons because of their refusal to give a promise that they would engage in that service in the future. It does appear, however, that on June 25, 1906, the libelants, or most of them, addressed to the master a letter in which they protested against the Bowhead proceeding eastward for the purpose of whaling. This protest was placed upon three grounds, one of which was the claim that the term for which they shipped had expired; but in this protest they said:

"We, the crew of the S. W. Bowhead, will do everything prescribed by law, but we emphatically refuse to wood or whale any longer. We, the crew of the S. W. Bowhead, will work the ship, or anything pertaining to the working of said ship, to its port of destination."

This was signed by the libelant James Woodland, but, notwithstanding the promise, on his part, to assist in working the vessel to its port of destination, the master kept him in irons until September 2, 1906, and I think the evidence shows that this was done because that libelant would not promise to assist in whaling; the master being of the opinion that he could rightfully require him to engage in that service.

The imprisonment of Woodland, after June 25, 1906, was, in my opinion, not justifiable. The time for which he shipped had expired, and it was the duty of the master, upon his request, to return with him to San Francisco, or to send him there by some other vessel, as

soon as possible, after the Bowhead was released from the ice. The Belvedere (D. C.) 100 Fed. 498.

7. The libelants Bowen, Walker, and Woodland left the ship, with the consent of her master, at Point Barrow, September 2, 1906. There was no settlement with them at that time, and they have received no compensation for their services, except an advance, and articles from the slop chest.

Faber quit the vessel at Herschel Island, May 28, 1906. There was no settlement with him, and he has received no other compensation, than an advance, and provisions and merchandise furnished him. When quitting the vessel he signed a release, but I do not think this release estops him from maintaining his libel. There was no accounting with him at the time, and nothing was given him in satisfaction of the wrongful treatment which he had received while on the vessel.

My conclusion is:

The libelants Anderson, Belyea, and Griffith are not bound by the shipping articles, signed by them, and are entitled to recover the reasonable value of their services on the Bowhead, during the voyage referred to in the libels, less any sums received by them on account of such services, and the value of all articles of merchandise furnished them during the voyage; and in addition thereto, Anderson and Belyea are each entitled to recover $400 on account of the assaults made upon them by the master of the Bowhead, and costs.

The libelants Woodland, Bowen, Walker, and Faber are entitled to recover the value of their services, for the time they served as seamen, calculated upon the basis of the shipping articles; that is, they are entitled to a proportionate share of the whalebone and oil secured, while they were on the Bowhead, less their proportionate share of the expense of bringing the same to San Francisco, and less, also, advances made to them, and the value of merchandise furnished them during the voyage. And, in addition thereto, the libelants Faber and Woodland are each entitled to recover, on account of the matters stated in the foregoing opinion, the sum of $500, and costs.

In satisfying said judgment, resort will first be had to the stipulation in said actions for the release of the Bowhead, and, if not so satisfied, then execution will issue against the defendant. The cause will be referred to United States Commissioner Brown, to ascertain and report the reasonable value of services of libelants Anderson, Belyea, Griffith, and the value of the services of Woodland, Bowen, Walker, and Faber, in accordance with the terms of their contract of shipment, and the amount received by them on account of such services. The libels will be dismissed as to all of the libelants, except Anderson, Belyea, Griffith, Woodland, Bowen, Walker, and Faber.

Let such a decree be entered.