## THE CUBADIST.

(District Court, S. D. Alabama.   August 13, 1918.)

### No. 1701.

1. SEAMEN ☞24—WAGES—"AFTER THE CARGO HAS BEEN DISCHARGED."
    Rev. St. § 4529, as amended by Seamen's Act (Comp. St. 1916, § 8320), providing that seaman on vessel making foreign voyage shall be entitled to his pay within 24 hours "after the cargo has been discharged," does not entitle a seaman to his wages in full up to the time the cargo has been discharged at any port or ports; the quoted words being used in the sense of the termination of the voyage for which the seaman has been employed.

2. STATUTES ☞208—CONSTRUCTION.
    Words in a statute are not to be given their ordinary meaning, when the context shows that they were intended to be given some other meaning.

3. STATUTES ☞205—CONSTRUCTION.
    In determining meaning of words in statute, the whole statute must be construed together, so as to get a harmonious construction of the whole, if it can be done.

4. SEAMEN ☞24—WAGES.
    Under Rev. St. § 4529, as amended by· Seamen's Act (Comp. St. 1916, § 8320), a seaman is entitled at once upon his discharge to one-third of the balance of the wages then owing to him, and not to a bonus equal to such an amount.

5. SEAMEN ☞18—REFUSAL TO PAY WAGES—"WITHOUT SUFFICIENT CAUSE."
    Under Rev. St. § 4529, as amended by Seamen's Act (Comp. St. 1916, § S320), as to master who refuses or neglects to make payment "without sufficient cause," having to pay seaman double wages, it is only in cases where the refusal to make payment is willful, and without justification or excuse, that double pay should be given.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Without Sufficient Cause.]

6. SEAMEN ☞24—WAGES—"WHEN THE VOYAGE IS ENDED."
    Under Rev. St. § 4530, as amended by Seamen's Act (Comp. St. 1916, § 8322), providing "and when the voyage is ended," every seaman shall be entitled to the remainder of his wages due as provided by section 4529 (section 8320), the voyage is ended for any particular seaman when his period of employment under his contract ends.

7. INFANTS ☞58(1)—WAGES—MINORS.
    Seamen, who were under 21 years when they signed shipping articles, were not bound thereby, and are entitled to their discharge and pay, although the period of employment under their contract is not ended.

In Admiralty.   Libel by Henry W. Gordon and others against the steamship Cubadist.   Decree for three of libelants, and libel dismissed as to others.

Howard & Pegues, of Mobile, Ala., for libelants.
Palmer Pillans, of Mobile, Ala., for claimant.

ERVIN, District Judge.   This is a libel filed by Henry W. Gordon and several other seamen against the steamship Cubadist, in which

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

they set up that they were employed as seamen about the 18th day of April in the port of Boston. The shipping articles provide as follows:

"It is agreed between the master and seamen or mariners of the steamship Cubadist, of which Harry L. Michelson is at present master, or whoever shall go for master, now bound from the port of Boston to Puerto Padre, Cuba, and for such other ports and places in any part of the [West Indies and or Gulf of Mexico] as the master may direct, and back to the final port of discharge in the United States north of Hatteras, for a term not exceeding six months."

The vessel sailed to Puerto Padre and took on a cargo to New Orleans, where she unloaded this cargo, and then proceeded to the port of Matanzas, Cuba, where she again loaded a cargo and brought it to Mobile, Ala., where she arrived on, to wit, May 20, 1918, and proceeded to unload this cargo. After arrival at Mobile, the various seamen demanded their discharge and the full payment of their wages, which demand was refused by the master. The seamen then filed this libel, in which they contend that they are entitled to be discharged and to be paid in full, because the voyage they signed for is ended.

There is no dispute between the libelants and the vessel as to the amount of wages earned and the amount paid on account, nor is it contended that the vessel has returned to a port north of Hatteras, or that the six months has expired, but the whole question in dispute is: Have the seamen completed the voyage they signed for, so as to entitle them to be discharged and paid? The seamen base their contention upon the language of sections 4529 and 4530 of the Revised Statutes, as amended by the Seamen's Act (Act March 4, 1915, c. 153, §§ 3, 4, 38 Stat. 1164 [Comp. St. 1916, §§ 8320, 8322]), which read as follows:

Section 4529: "The master or owner of any vessel making coasting voyages, shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases, the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause, shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage."

Section 4530: "Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract, and he shall be entitled to full payment of wages earned. And when the voyage is ended, every such seaman shall be entitled to the remainder of the wages which shall then be due him, as provided in section forty-five hundred and twenty-nine of the Revised Statutes: Provided fur-

ther, that notwithstanding any release signed by any seaman under section forty-five hundred and fifty-two of the Revised Statutes, any court having jurisdiction may, upon good cause shown set aside such release and take such action as justice shall require: And provided further, that this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement."

[1] It is contended by libelants that they are entitled to full pay, even if not to a discharge, under the second paragraph of section 4529, which provides that the seaman shall be entitled to his wages "in the case of vessels making foreign voyages * * * *within twenty-four hours after the cargo has been discharged,* or within four days after the seaman has been discharged, whichever first happens." It will be noticed that the language does not expressly state that the seaman shall be entitled to his discharge when the cargo has been discharged; hence the argument is that the statute provides that the seaman shall be entitled to his wages in certain contingencies, one of which is the discharge of the seaman, either by the termination of the time for which he is employed, or for any other reason, or when the cargo has been discharged.

It is urged upon me that this language as written necessarily implies that the seaman is to be paid his wages in full up to the time the cargo is discharged at any port or ports at which the vessel calls and unloads her cargo. To illustrate the contention by the case shown here: The vessel went from Boston to Puerto Padre and loaded a cargo which she discharged at New Orleans. She then went back to Matanzás and loaded another cargo, which she discharged in Mobile, and that hence, under the language of the above statute, the seamen were entitled to be paid their wages in full as earned at both New Orleans and Mobile.

[2] It is urged with earnestness that the words used in a statute are to be so construed as to give the words used their ordinary meaning. This rule of construction is not always to be followed literally. It is true that words used are to be given their ordinary meaning generally, but one should never lose sight of the purpose intended to be accomplished by statute, and the words used are not to be given their ordinary meaning, when the context of the statute shows that they were intended to be given some other meaning.

[3] Again, in getting at the meaning of words as used in a statute, the whole statute must be construed together, so as to get a harmonius construction of the whole statute if this can be done; otherwise, we would have one part of a statute given one construction and another part an entirely different construction, so that the parts will be inconsistent with each other. A careful reading of section 4529 will show that Congress intended that the seamen should be paid their wages in full when their term of service is ended, either by performance or discharge. Each of the instances in which the seaman is entitled to his full wages shows that this was intended, and when we examine the language used, which says that in case of the vessel's making foreign voyages, the seaman shall be entitled to his pay within 24 hours after

the cargo has been discharged, these words "after the cargo has been discharged" manifestly were used in the sense of the termination of the voyage for which the seaman had been employed.

When these statutes were originally written, it was customary for the crews of the vessel to load and unload the cargoes. That custom has in course of time been entirely changed, so that now the loading and unloading of the cargo is performed by stevedores, who themselves furnish the hands to put the cargo aboard and store it on the vessel, and to take it out of the vessel and deliver it on the shore. This will explain the provisions in this statute, requiring the seaman to remain until the cargo is discharged, because the cargo was then discharged by the seaman, and his employment was not ended until he had helped discharge the cargo. This construction must necessarily be the one adopted, unless there is to be a conflict between the provisions of section 4529 and those of section 4530, because section 4529 provides for the payment to the seaman of his wages in full, while section 4530 provides for the payment to the seaman of "one half part of his wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended. * * * And when the voyage is ended, every such seaman shall be entitled to the remainder of the wages which shall then be due him, as provided in section 4529."

It will be noticed here that this half part of the wages is payable at each port where the vessel shall load or deliver cargo. Now, to put the construction which is sought upon the language used in section 4529, would make that section require the payment to the seaman in full of his wages, when the cargo was discharged, and section 4530 would provide for the payment to the seaman of only one-half of his wages when the same thing was done. It is manifest that these two sections would then be in hopeless conflict. The courts have all agreed that the purpose of the provisions of section 4530, which authorizes the vessel to retain one-half part of the wages which have been earned by the seamen was to enable the vessel to have some hold upon the seaman to induce him to perform his contract of service in full, so that he would himself have an inducement to prevent him from forfeiting his contract.

I am therefore constrained to overrule the contention of the seamen and to hold that the words used in section 4529, giving the seaman the right to his wages on a foreign voyage, when the cargo has been discharged, were used to indicate a termination of the period for which the seaman had been employed.

[4] There is another expression in this section which at first blush is confusing. It is found in these words:

"And in all cases, the seaman shall be entitled to be paid at the time of his discharge on account of wages, a sum equal to one-third part of the balance due him."

This language is open to two constructions: One is that the seaman is to be given a bonus when he is discharged, equal to one-third part of the balance of the wages then owing to him, while the other con-

struction is that he shall be paid at the time of his discharge, one-third of the balance then owing to him. The language used is awkwardly expressed, but bearing in mind that the provision for the payment to the seaman of the balance of his wages, which precedes this language, did not give them to him, except at the end of some enumerated period of time, I think that the purpose was to give him, at once upon his discharge, one-third of whatever balance was then owing, so that he might have something on which to live until the balance of the wages were payable to him.

[5] There is a confusion as to another part of this statute, which reads as follows:

"Every master or owner, who refuses or neglects to make payment in the manner hereinbefore mentioned, *without sufficient cause* [italics mine] shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court."

It has been contended that, wherever the seaman recovers his wages after a refusal of payment has been made by the master, this recovery should have added to it double pay for the period following the demand and until the hearing. I cannot agree with this contention, for I do not think the words "without sufficient cause" are intended to mean this. If this were the meaning intended, the words "without sufficient cause" would have been omitted, and the language then used would have expressed this meaning. The inclusion of these words, however, negatives this idea.

What, then, is meant by the words "without sufficient cause"? There are numerous instances where masters have been known to willfully refuse to pay seamen their wages. In these cases I think it unquestionable that, if the seaman recovers, he should also recover double pay. There are, however, other cases where the master may have just cause to doubt whether the seaman is entitled to demand his pay, or cases where it may be a very close question. I do not think that the statute was intended to penalize any master or vessel for exercising sound judgment and discretion, or to require them to surrender such judgment under a penalty of double pay. I think the language used carries with it the idea that, where the court finds that the master's refusal was willful and without justification or excuse, double pay should be given, but where the master was exercising a reasonable and proper discretion, and the question was doubtful, it reserves to the court the power to pass upon the question of the reasonableness or the sufficiency of the excuse of the master, and give or deny the double pay, accordingly as the court may find the contention of the master to be honest or a mere pretext.

[6] Another question has been pressed upon me, which is the construction of the language used in section 4530, where it says:

"And when the voyage is ended, every such seaman shall be entitled to the remainder of the wages which shall then be due him, as provided in section four thousand five hundred and twenty-nine of the Revised Statutes."

It is contended here that the voyage is ended whenever the vessel carries a cargo from one port to another and there unloads it. I cannot accept this contention. I think the language used imports the idea that the voyage is ended for any particular seaman when his period of employment under his contract ends. The voyage might be ended for one seaman at one port, for another seaman at another port, and for still a third seaman at a different port; for instance, a vessel might sail from Mobile to Havana, Cuba, thence to the River Plate, thence to Jacksonville, Fla., and back to Mobile. She might employ a number of her crew to take the whole round trip, another part to go only as far as Havana, and another part to the River Plate. Now the voyage would be ended as to each of these seamen at the point where his contract for services terminated.

I have gone more into the detail in discussing the various contentions made as to the proper construction of these two sections, because neither I nor the proctors in this case have been able to find any construction by other courts of these statutes in this respect, though these proctors have searched diligently for such constructions. I have given the conclusions I reached and the reasons which prompted me to reach them, hoping that other judges, as the questions may arise before them, will criticize and correct or amplify them as their experience and judgment may indicate.

[7] Among the libelants who joined in this libel, there were three over the age of 21 years at the time the libel was filed, and these three are Henry W. Gordon, Hermann Zahlit, and William Burman. I am of the opinion, therefore, that as to these three that they are not entitled to recover, and as to them the libel should be dismissed. There are, however, three others, Frans Westra, Hans Larsen, and Adolph Aarons, each of whom were under the age of 21 years at the time they signed the shipping articles. Being under 21 years of age, they were not bound by their contract, and hence are entitled to their discharge and pay. Belyea v. Cook (D. C.) 162 Fed. 180.

There being no dispute about the balance of the wages owing to these men, a decree will be entered in favor of each one of them against the vessel for the amount shown to be due them, with costs.