HOWARD J. BARFIELD and Others, Plaintiffs, *v.* STANDARD OIL COMPANY OF NEW JERSEY, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, August 21, 1939.

96

*William L. Standard* [*Louis H. Rubinstein* of counsel], for the plaintiffs.

*Kirlin, Campbell, Hickox, Keating & McGrann* [*Raymond Parmer* and *Robert A. Lilly* of counsel], for the defendant.

WINTER, J. Plaintiffs are suing to recover wages earned as seamen aboard the steamship *Parish* from April 21, 1939, with the penalties recoverable as wages as prescribed in section 4529 of the Revised Statutes (U. S. Code, tit. 46, § 596) for waiting time from April 21, 1939, to May 3, 1939. The court is requested to assess the additional time from May third up to the time of the trial.

On the 10th day of April, 1939, in New York city, plaintiffs signed articles as seamen for a voyage to Corpus Christi, Texas, and return to a final port of discharge in the United States. When the ship had reached Corpus Christi on April 21, 1939, officials of the National Maritime Union notified the crew of a strike against the defendant and ordered them to leave its ship. Plaintiffs thereupon advised the captain and offered to give him twenty-four hours' notice of their intention to leave the ship. The captain refused to discharge the men, but offered instead to pay them one-half of the wages then earned. Plaintiffs then left the ship, which subsequently sailed for Baltimore, its final port of discharge, with a new crew shipped on at an extra expense of from ten to fifteen dollars a man. Plaintiffs, not having returned, were duly logged for desertion. Up to the time of the suit they had received no wages on account of the voyage, but so far as the record shows

had neither made any demand nor made themselves available for the payment of the same, unless the notice to the captain of the strike can be construed as such. On these facts they are demanding not only the wages earned up to the time of their quitting the boat but also the triple wages recoverable as a penalty for withholding the wages due them.

Defendant has defended these claims on the ground that plaintiffs deserted the vessel at Corpus Christi, and, under section 4596 of the Revised Statutes (U. S. Code, tit. 46, § 701), "forfeited all or any part of their wages and emoluments which they had then earned." Plaintiffs' reply to this defense is, *first*, that the articles signed by them in New York did not bind them to a voyage beyond Corpus Christi; *second*, that section 4596 of the Revised Statutes does not apply to seamen on board vessels engaged in the coastwise trade, and that, therefore, plaintiffs were exempt from forfeiture of wages for their desertion of the vessel at Corpus Christi; *third*, that their abandonment of the vessel was in obedience to a strike order and was legally justified.

First off I am of the opinion that the articles signed by the plaintiffs were perfectly valid and binding upon them as to all its terms. There is nothing vague, ambiguous or indefinite about these articles, the extent of the voyage or the length of the plaintiffs' service. Similar articles have been upheld in the *West Kebar* (*Pells*) case (1939 A. M. C. 345 [March 14, 1939]) and in *United States* v. *Bain* (5 Fed. 192). So far as I can see from the record no fraud was played upon the plaintiffs to induce them to sign these articles. Nor is there any claim here that the articles depended upon a condition subsequent for their validity. So that I am constrained to hold that Mr. Barfield's oral testimony of practices and customs among seamen and masters in respect to other contracts, which, after all, amounted to nothing more than mutual forbearances for each other's convenience, are not available here to vary and contradict the plain intent of these articles. (*Thomas* v. *Scutt*, 127 N. Y. 133.) Written articles with plaintiffs setting forth the voyage or the term of service were mandatory upon the captain of this vessel, and had such articles not been signed plaintiffs might have deserted the vessel with immunity from the statutory forfeitures and penalties. The articles are primarily for the protection of the plaintiffs against the defendant, and it does not lie well in their mouths to say that a practice of ignoring the articles has nullified the law and at the same time maintain their freedom from its penalties. (U. S. R. S. §§ 4520, 4521 [U. S. Code, tit. 46, §§ 574, 575].)

The articles, being perfectly valid, bound the plaintiffs to stand by the ship and obey the master until the voyage was done, unless she had come to such a pass as to be dangerous to human life. The voyage was not done and the contract terminated until the arrival of the steamship at her dock at Baltimore, which was her final port of discharge. (*The Cubadist*, 252 Fed. 658; certiorari denied, 249 U. S. 618; *Stratton* v. *Babbage*, 23 Fed. Cas. No. 13527; *The Helen Fairlamb*, 251 Fed. 412; *The Condor*, 196 id. 71, and cases cited therein.)

Desertion has been defined as the abandonment of duty by quitting the ship before the termination of the engagement without justification and with the intent of not returning. (*The City of Norwich*, 279 Fed. 687.) Since 1790 the courts of this country have consistently held that a seaman employed for a voyage, or for a definite time, who deserts the vessel or voluntarily leaves the vessel before the termination of the voyage or the expiration of the time agreed upon without justifiable cause or the consent of the master, thereby forfeits all wages previously earned. The rule was applied both by the maritime and the common law, irrespective of statutes. When an engagement is for an entire period or undertaking it must be fully performed or all claim to compensation is lost. (*Coffin* v. *Jenkins*, 3 Story, 108; *Coffin* v. *Shaw*, 5 Fed. Cas. No. 2952; *Cloutman* v. *Tunison*, 1 Sumner, 373; *The Osceola*, 18 Fed. Cas. No. 10602; *The Galina*, 6 Fed. 927; 3 Kent's Commentaries, 198; *Burton* v. *Salter*, 4 Fed. Cas. No. 2218; *Cadmus* v. *Matthews*, 4 id. No. 2282; *Welcome* v. *Yosemite*, 18 Fed. 383; *The Swallow*, 23 Fed. Cas. No. 13664; *Kasit* v. *Pilot Boat No. 5*, 54 Fed. 537; *The Charles K. Schull*, 166 id. 374; *The Victorian*, 88 id. 797; *The City of Norwich*, 279 id. 687; *The Cubadist*, 252 id. 658; certiorari denied, 249 U. S. 618; *Hochberg Contract Co.* v. *F. & P. Auto Transp. Co.*, 158 N. Y. Supp. 879 [App. Term].) "The purpose * * * [of requiring forfeiture of wages earned by a seaman] is to enable the vessel to have some hold upon the seaman to induce him to perform his contract of service in full, so that he himself would have an inducement to prevent him from forfeiting his contract." (*The Cubadist*, 252 Fed. 658.) The rule was applied indiscriminately in these cases to seamen employed on vessels engaged in the domestic trade, and also on vessels engaged in the foreign trade. There is not one authority that counsel has called to my attention or that I could discover holding that a seaman might unjustifiably desert his ship with impunity even if it were engaged in the coastwise traffic. In the foreign trade desertion has always been looked on as a heinous offense both by the statutes and the maritime law, and was punishable by imprisonment until 1915.

Plaintiffs argue that the Revised Statutes of the United States, as enacted June 22, 1874, exempted seamen from the punishment of imprisonment for the offense of desertion whenever it occurred on vessels engaged in the coastwise trade, and that such deserters were forever after exempt from all punishment or legal consequences either at the common law, maritime law or by statute, except when the statute specifically applied to coastwise vessels, because the act of June 9, 1874 (18 U. S. Stat. at Large, 64), curtailing the act of 1872, all of which was embodied in the Revised Statutes, was never specifically repealed. I cannot follow this and I believe it conflicts with the cited cases and also with the history of section 4596 of the revision and also with common sense.

The basis of the Seamen's Act in the Revised Statutes is the act of July 20, 1790, chapter 29, and the act of June 7, 1872, chapter 322. Neither of them discriminated between seamen in the foreign trade and those in the domestic trade so far as punishments were concerned. The former, by its section 7, penalized all desertions alike by arrest and delivery to the captain of the deserter. The latter, by its section 51, supplanted that section of the act of 1790 and penalized all desertions alike by imprisonment and by forfeiture of wages, and that section was incorporated as section 4596 in the Revised Statutes, enacted by Congress June 22, 1874. However, in the meanwhile, the act of Congress of June 9, 1874, had intervened and had provided that none of the provisions of the latter should apply to sail or steam vessels engaged in the coastwise trade. The Revised Statutes preserved this limitation by repealing all acts passed prior to December 1, 1873, any portion of which were embraced in any section of the revision, and by keeping alive any act of Congress passed since that date. (U. S. R. S. §§ 5596, 5601.) It did not intend, however, to endow all subsequent statutes with immortality. The result of this was that all sections of the revision derived from the act of 1872 were held by the courts to have been repealed so far as they affected seamen on vessels engaged in the coastwise trade, and that, consequently, section 4596, being derived from the act of 1872, did not apply to seamen on coastwise vessels, who thereafter were immune from the statutory punishment for desertion. ( United States v. Bain, 5 Fed. 192 [1880]; United States v. King, 23 id. 138 [1885]; United States v. Buckley, 31 id. 804 [1887]; United States v. Mason, 34 id. 129 [1888]; Inter-Island Steam Navigation Co. v. Byrne, 239 U. S. 459 [1915].) None of these cases nor any others have ever held that section 4596 of the Revised Statutes, as limited by the act of 1874, had abolished the doctrine of forfeiture of wages for desertion as it was applied by the maritime and common law.

On the contrary, it has been held that both the act of 1790 and that of 1872 had supplemented and not repealed the general maritime and the common law, and that, irrespective of those acts, desertion was still punishable by forfeiture of wages whether the offense was committed by seamen on vessels engaged in the foreign or the coastwise trade. (*Coffin* v. *Jenkins*, 3 Story, 108; *Coffin* v. *Shaw*, 5 Fed. Cas. No. 2952; *Cloutman* v. *Tunison*, 1 Sumner, 373; *The Osceola*, 18 Fed. Cas. No. 10602; *The Galina*, 6 Fed. 927; 3 Kent's Commentaries, 198; *Burton* v. *Salter*, 4 Fed. Cas. No. 2218; *Cadmus* v. *Matthews*, Id. No. 2282; *Welcome* v. *Yosemite*, 18 Fed. 383 [1883]; *The Swallow*, 23 Fed. Cas. No. 13664; *Kasit* v. *Pilot Boat No. 5*, 54 Fed. 537 [1893]; *The Victorian*, 88 id. 797 [1898].)

The Revised Statutes maintained this status until 1898, when Congress, by the act of December 21, 1898, chapter 28 (30 U. S. Stat. at Large, 760), completely overhauled and amended section 4596 so as to make the punishment of forfeiture of wages cover desertion whether committed by the crew of vessels in foreign or coastwise trade. It accomplished this in the teeth of the act of 1874 by defining domestic and foreign trade and separately treating the offense of desertion as to each. It prescribed for seamen in the domestic trade in the following language: " Whenever any seaman who has been lawfully engaged or any apprentice to the sea service commits any of the following offenses he shall be punishable as follows: First: For desertion, if the offense occur at a port of the United States, or a foreign port in the domestic trade, by forfeiture of all or any part of the   *   *   *   wages or emoluments which he has then earned." Desertion in the foreign trade is made punishable by forfeiture of wages and effects and by imprisonment at the discretion of the court. This enactment put section 4596 in conflict with the act of June 9, 1874, but, being of a later vintage, superseded it where they were inconsistent. To my way of thinking, after the 21st day of December, 1898, the influence of the act of 1874 upon section 4596 of the Revised Statutes had been forever eliminated as far as punishment for desertion was concerned.

From then on until 1915 there has existed specifically a statutory punishment for desertion by forfeiture of wages when committed either in the coastwise trade or in the foreign trade and also a statutory punishment by imprisonment when committed in the foreign trade. In that year Congress made its final amendment and brought the section down to its present form. By the act of March 4, 1915, chapter 153 (38 U. S. Stat. at Large, 1166), it now reads: " Whenever any seaman who has been lawfully engaged or any apprentice to the sea service commits any of the following offenses, he shall be punished as follows: First. For desertion, by

forfeiture of all or any part of the clothes or effects he leaves on board and of all or any part of the wages or emoluments which he has then earned." Section 4596 now reads substantially as did the original act of 1872, with the omission of the penalty of imprisonment for desertions in the foreign trade. This section is embodied in the United States Code as section 701 of title 46, while the act of June 9, 1874, appears as section 544 of such title. The latter still does not refer to the former, but in words merely relates to the act of 1872 by its title.

It seems to me that Congress, in amending section 4596 by the act of 1898, intended to conform it in language to the original conception of the act of 1872 before the revision, and also to the maritime and the common law, which the courts had been applying to desertions from coastwise vessels irrespective of the act of 1874. It also seems to me that Congress, by the act of 1915, intended only to abolish the punishment of imprisonment for desertion. As an incident it changed the statute back to its original language of 1872 to simplify it, as it was enabled to do this by the elimination of the act of 1874. In my opinion, therefore, section 544 of title 46 of the United States Code does not limit section 701 of that title of the Code, being section 4596 of the Revised Statutes, as amended by the act of 1915, and desertion from vessels in the coastwise trade is now punishable under this statute by forfeiture of wages, as it is by the maritime law and the common law.

Shipping articles committing the crew to an entire voyage or a definite term are considered by the maritime law and also by the common law to be entireties, and the seaman's right to his wages cannot be divided into several claims for the wages for each day's work as rendered by him. The wages are not due until he is discharged or when the voyage is done or his term is completed. On the other hand, he is entitled to the full wages for an entire voyage broken up by the fault of the master or the owner. (*The City of New Orleans*, 33 Fed. 683; *Stratton* v. *Babbage*, 23 Fed. Cas. No. 13527.) Under the common law also such a contract is an entirety, and the employee breaching the same cannot recover for the work performed, either under the agreement or upon a *quantum meruit*. (*Hochberg* v. *V. F. & P. Auto Transp. Co.*, 158 N. Y. Supp. 879 [App. Term]; *The Leiderhorn*, 99 Fed. 1001.)

In my opinion also the strike at Corpus Christi called by the Maritime Union did not justify the plaintiffs' desertion of the vessel and their breach of their articles. I can find no support anywhere for the novel doctrine to the contrary advanced by them. On the other hand, the reports and the *Law Journal* are full of cases where the courts have enjoined and found damages for unlawful acts

committed by over-zealous strikers in aid of collective bargaining, including squatting in their employers' plants, assaults and other trespasses. That they might not also breach valid shipping articles in aid of a strike and to the detriment of the ship, cargo and voyage and escape the legal consequences has also been held by the Federal courts. ( *United States* v. *Smith*, 12 F. [2d] 265; *The M. S. Elliot*, 277 Fed. 800; *Rees* v. *United States*, 95 F. [2d] 784.)

A strike, as I understand the term, is a concerted abandonment or desertion of their employment by groups of employees with the object of improving their working conditions, hours of labor and wages. As most strikers are employees at will, the question of breach of contract by leaving employment seldom arises, and, if it does, the consequences most likely are determined in the settlement of the strike.

The right of employees to self organization, to form, to join and assist labor unions, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid and protection has long been recognized by the courts and public opinion as lawful and in the public interest. The National Labor Relations Act of July 5, 1935, chapter 372 (U. S. Code, tit. 29, §§ 151–166), has declared the right to be under the protection of the United States so far as interstate commerce is concerned, and has defined an interference with that right and any coercion of an employee in the exercise of that right to be an unfair labor practice and subject to an order of the National Labor Relations Board to cease and desist, including reinstatement of a discharged employee and payment of back pay. By this act Congress did not create a new right or repeal any of the disabilities of the old. It merely broadened the old right by protecting it against certain practices which had become odious to an enlightened public, and which in labor terminology were unfair. Common instances of these were the arbitrary discharge of employees because of membership in unions. The conception of " unfair," as that term was understood in labor controversies, was different from its idea in legal controversies. As used by labor, the word conveyed the idea of coercion, while in law it meant fraud and deceit. To labor an act was unfair which unreasonably forced an advantage in bargaining, while in law it was unfair only when it reaped an advantage in bargaining by an intentional misrepresentation of a material fact. By introducing labor's conception into the law, Congress obviously did not intend to grant a blanket immunity to employees from the consequences of illegal acts and breaches of contracts just because they were committed in the

course of a labor dispute, no matter how helpful they might be to their cause. The rule of reason should be read into the act. As Judge Augustus N. Hand, in the United States Circuit Court of Appeals, has said: " The [National Labor Relations] Act is not calculated to force adjustments of disputes, and each party to a labor controversy is left to use its own economic strength in all lawful ways to promote its advantage." (*Black Diamond S. S. Corp.* v. *National Labor Relations Board*, 94 F. [2d] 875.)

The decision of the Circuit Court of Appeals in *Weisthoff* v. *American-Hawaiian SS. Co.* (79 F. [2d] 124) does not seem to me to conflict with these views. In that case the court merely held that the seamen there, who had left their ship, had not committed the offense of desertion because the master had breached the articles under which the men had shipped by setting his watches contrary to law, and that the men had thereby been discharged from the articles. It was the owner's unlawful conduct and not the strike that, in the opinion of the court, justified the men in leaving the ship.

Upon the law and the facts as I have found them in this case the plaintiffs are not entitled to any wages for the time they served on the defendant's vessel up to the time they deserted the boat, either under the terms of their articles or upon a *quantum meruit*. As no wages were, therefore, withheld from them by the defendant they are not entitled to triple wages by way of penalties for such withholding.

I am, accordingly, entering my decision herein that the defendant is entitled to judgment dismissing the plaintiffs' complaint.