CLOUTMAN (SWEENEY v.). See Case No. 13,685.

————

# Case No. 2,907.

## CLOUTMAN v. TUNISON.

[1 Sumn. 373.][1]

Circuit Court, D. Massachusetts. May Term, 1833.

SEAMEN'S WAGES — FORFEITURE FOR DESERTION — CONDONATION — ENTRY IN LOG-BOOK — END OF VOYAGE — UNLIVERY OF SHIP — DUTY OF OFFICERS AND CREW.

1. Desertion during the voyage is by the maritime law a forfeiture of all wages antecedently due. But a desertion, to work this effect, must be, not merely an absence without leave, or in disobedience of orders, but animo non revertendi, an intention to abandon the ship and the service.

[Approved in The Union v. Jansen, Case No. 14,348. Cited in The Rovena, Id. 12,090; The Crusader, Id. 3,456; The Swallow, Id. 13,664; The Philadelphia, Id. 11,084; The Moslem, Id. 9,875; The Osceola, Id. 10,602; Joy v. Allen, Id. 7,552; Burton v. Salter, Id. 2,218; The Merrimac, Id. 9,474; The Almatia, Id. 254; The John Martin, Id. 7,357. Distinguished in Graham v. The Exporter, Id. 5,667.]

2. If after desertion a seaman offer to return to duty in a reasonable time, and offer amends, and repent of the offence, the master is bound to receive him back, as a case fit for condona-

———

[1] [Reported by Charles Sumner, Esq.]

tion, unless his previous misconduct would justify a discharge.

[Cited in Scully v. The Great Republic, Case No. 12,571.]

3. By the act of 1790. c. 56 [1 Story's Laws, 102; 1 Stat. 133, c. 29], a statute desertion and forfeiture of wages are created by forty-eight hours' absence without leave, if a proper entry be made, on the day of the absence, in the log-book.

[Cited in The Rovena, Case No. 12,090; The Quintero, Id. 11,517; Welcome v. The Yosemite, 18 Fed. 384. Criticised in The Union. Case No. 14,347. Approved in Coffin v. Jenkins, Id. 2,948.]

4. The effect of this provision is, that the absence for such a period is deemed conclusive evidence of desertion; whereas in the maritime law it would only afford a presumption of desertion.

[Cited in The John Martin, Case No. 7,357; Welcome v. The Yosemite, 18 Fed. 384.]

5. The due entry in the log-book is indispensable to inflict the statute forfeiture. If not made on the very day of the absence, there can be no forfeiture inflicted.

[Cited in The Quintero, Case No. 11,517; The Lilian M. Vigus, Id. 8,346.]

6. Desertion, to bring after it the forfeiture of wages, either by the maritime law or by the statute. must be during the voyage, and before it is ended.

[Cited in Francis v. Bassett, Case No. 5,-037.]

7. The voyage is ended, when the ship has arrived at her proper port of destination, and is moored in safety in the accustomed place, although her cargo is not unlivered.

[Cited in The Mary, Case No. 9,191; Francis v. Bassett, Id. 5,037.]

8. Officers and seamen are bound to remain by the ship, and unliver the cargo. If they do not. they are liable for damages and a compensation to the owner.

[Cited in The Hudson, 6 Fed. 830.]

9. A forfeiture of two months' pay, deducted for absence of a second mate without leave, during unlivery of the ship, under the circumstances.

[Appeal from the district court of the United States for the district of Massachusetts.]

Libel for wages [by Thomas Cloutman] as second mate of the ship America, in personam, against [George R. Tunison] the master of the ship. The district court decreed in favor of the libellant.

Mr. Peabody, for appellant.
David A. Simmons, for libellant.

STORY, Circuit Justice. This is a suit by libel against the appellant in personam, for wages asserted to be due to the libellant, as second mate of the ship America, belonging to the port of Boston. The voyage, as described in the shipping articles, is "from the port of Boston for Cuba; from thence to one or more ports in Europe; and back to her port of discharge in the United States." The voyage was duly performed, and the ship safely arrived on her return at Boston, and there duly discharged her cargo; and there is no question, that the libellant performed his duty on board, until after the arrival of the ship. The defence set up by the answer

to the libel is, that the ship arrived at Boston, on Friday, the 4th of January, 1833; that after her arrival, to wit, on Monday, the 7th of January, the libellant, not having been discharged, "left the ship without any license or permission from the respondent, and without any license or permission from any other person to his knowledge; and that he (the respondent) is informed, and believes, that the libellant did not return, or offer to return on board, till Saturday, the 12th of January; and by so deserting the ship and his duty, this respondent suggests. that the libellant has forfeited his claim for wages." The answer farther alleges, that the respondent, with the consent of the owner, on Friday, the 4th of January, left the ship, and went to Salem, on a visit to his family, whence he returned on Monday following; and on going on board, he saw the libellant there; that the respondent immediately went into the cabin, where he had occasion to visit his trunk, which he found broken open; and that certain articles (naming them), of the value of $34, had been taken therefrom; and on his return on deck, the libellant had left the ship without his consent; and he has never since seen him on board of the ship. As to this latter allegation of embezzlement from the trunk of the respondent, during his absence from the ship, I do not perceive, in the actual form in which it is propounded, that it has the slightest bearing upon the merits of the case. It does not set up. that the embezzlement was either by the libellant, or by his connivance; or that it was occasioned by his gross negligence or failure in duty. And certainly without one of these ingredients, it is utterly impossible to maintain it, as an articulation of any matter of defence, or of set-off against the claim of wages. If it had been intended to present it to the court in either aspect, the answer should have been framed with suitable certainty and directness for this purpose; for in admiralty proceedings the cause must be heard upon the proofs, as applied to the allegations, secundum allegata et probata. No proofs are admissible of any facts not propounded in the allegations; and the decree must stand upon both. Whatever is not alleged is coram non judice. I dismiss, therefore, all consideration of this charge, as incapable of having any bearing upon the controversy before the court.

The other part of the defence requires a more full and exact consideration. By the general maritime law, desertion from the ship in the course of the voyage is held to be a forfeiture of the antecedent wages earned by the party; and this rule is equally as applicable to the officers, as it is to the seamen of the ship. It is believed, that this rule constitutes a part of the maritime code of every commercial nation, and is founded upon a universal principle of public policy. But, still, a very important question remains, upon which much loose and unsatisfactory opinion seems to pervade the community. It

is, what in the sense of the maritime law constitutes desertion? It is commonly enough supposed, that an absence from the ship without leave of the proper officer, or in disobedience of his orders, constitutes desertion. But this is certainly a mistake. Desertion, in the sense of the maritime law, is a quitting of the ship and her service, not only without leave, and against the duty of the party, but with an intent not again to return to the ship's duty. There must be the act of quitting the ship, animo derelinquendi, or animo non revertendi. If a seaman quits the ship without leave, or in disobedience of orders, but with an intent to return to duty, however blamable his conduct may be,—and it is certainly punishable by the maritime law, not only by personal chastisement, but by damages by way of diminished compensation (see 1 Valin, Comm. lib. 2, p. 534, tit. 7, art. 3; The Mentor [Case No. 9,427]; 3 Kent. Comm. (2d Ed.) pp. 198, 199, lect. 46),—it is not the offence of desertion, to which the maritime law attaches the extraordinary penalty of forfeiture of all antecedent wages. And even in a case of clear desertion, if the party repents of his offence, and seeks to return to duty, and is ready to make suitable apologies, and to repair the injury sustained by his misconduct, he is entitled to be received on board again, if he tenders his services in a reasonable time, and before another person has been engaged in his stead, and his prior conduct has not been so flagrantly wrong, that it would justify his discharge. Upon this subject it is well known, that the maritime law encourages a reasonable indulgence to human infirmity, and especially to the known thoughtlessness and rashness of seamen. It favors repentance and condonation; and will not permit a master to insist upon the utmost stretch of authority, or forfeiture, unless there is a clear propriety in exerting it. My learned friend, Mr. Chancellor Kent, has, in his Commentaries (volume 3, 2d Ed., p. 198, lect. 46), put this doctrine on its right footing, and persuasively shown its justice and sound policy. But there must not only be a desertion, but the desertion must be in the course of the voyage, and before its termination in the home port, to justify an infliction of the forfeiture by the maritime law. It is not sufficient, that there has been a desertion after the voyage has ended; although it be within the period, for which the party is bound to do duty on board the ship. It must be during the voyage. Now, when is the voyage ended, in the sense of the maritime law? I answer, when the ship has arrived at her last port of destination, and is moored in good safety in the proper and accustomed place. I do not say, that the officers or seamen are then discharged from any farther duty, and are not bound to attend to the unlivery of the cargo. On the contrary, I maintain, that the seamen, and a fortiori the officers are bound to remain by the ship, and watch over her concerns, and assist in the unlivery of the cargo, if made in a seasonable time; unless there be some express or implied agreement, or established usage, to dispense with their farther services. There is a clause in the common ship articles, pointed to this very duty. "And whereas" (says the clause) "it is customary for the officers and seamen, on the vessel's return home, in the harbour, and whilst her cargo is delivering, to go on shore each night to sleep, greatly to the prejudice of such vessel and freighters, be it further agreed by the said parties, that neither officer nor seaman shall, on any pretence whatever, be entitled to such indulgence; but shall do their duty by day in discharging the cargo, and keep such watch by night as the master shall think proper to order for the preservation of the same." And this very stipulation is in the present articles, and constitues a part of the contract. But it is one thing to be responsible for a violation of the terms of the contract; and quite another thing to incur the visitation of the maritime penalty of forfeiture of the whole wages of the voyage. In the present case, it is, in my judgment, quite clear that the voyage was ended, so far as the maritime law is concerned, at the time when the asserted act of desertion took place. The vessel was not only safely moored, but had come to the wharf, and had been duly entered, and part of her cargo had been discharged. However reprehensible the act, then, was, it was not a desertion during the voyage; and therefore, so far as the forfeiture turns upon the principles of the maritime law, it was not incurred. Nor is there any thing novel in this doctrine. It is manifestly implied in the reasoning of that truly great judge, "princeps inter pares," Lord Stowell, in the case of The Pearl, 5 C. Rob. Adm. 224, which has been cited at the bar. But it is still more directly announced in the more recent case of The Baltic Merchant, Edw. Adm. 86. In this latter case, which turned upon the very point, whether the voyage was ended by a mere arrival in port, Lord Stowell on that occasion said: "By interpretation of law, the voyage is not completed by the mere act of arrival. The act of mooring is an act to be done by the crew; and their duty extends to the time of the unlivery of the cargo. There is no period at which the cargo is more exposed to hazard, than when it is in the act of being transferred from the ship to the shore; and therefore the law, not only the old law, but particularly the statute, by which the West India trade has been in later times regulated," (and the case before him was of a West India ship,) "has enjoined in the strictest manner, that the mariners shall stay by the vessel, until the cargo is actually delivered. I take this to have been always a part of the duty of the mariners; their contract is legally understood to go this length; and there never can have been a

time, when the owner was not entitled to some consideration against the mariners, on account of the non-completion of the contract. This is a consideration not in modum poenae, but it is a civil compensation for injury received, existing in all reason and justice antecedently to any statute upon the subject." His lordship here points out the very distinction between cases of compensation for an imperfect performance of the contract, and cases of forfeiture for desertion, which are strictly in poenam. And he afterwards proceeded to decide, that the voyage in that case could not, upon the true construction of the statutes on the subject of the West India trade, be deemed to be ended, (not, until the cargo was unlivered, but) until the vessel was safely moored in the West India docks; and when so moored, he held the voyage complete and ended, so that the forfeiture for desertion would not afterwards attach. But, the desertion being before such mooring, he pronounced for a forfeiture in the case. It seems to me, that this decision is as fully in point as could be desired; and it affirms, what has always appeared to me to be the true import of the maritime law. See Abb. Shipp. pp. 463–472, pt. 4, c. 3, § 3, and Story's Notes (Ed. 1829); Frontine v. Frost, 3 Bos. & P. 302. I am therefore of opinion, that, upon the mere footing of the maritime law, no forfeiture of wages has been incurred; because, in the first place, I am not satisfied, that there was any quitting the ship animo non revertendi, with an intention to desert the service; and, in the next place, because, at the time of the asserted absence, the voyage was ended.

The next question is, whether there has been any statute forfeiture of the wages for the asserted desertion. The fifth section of the act regulating seamen in the merchants' service—Act 1790, c. 56 [1 Stat. 133, c. 29]—provides, "that if any seaman, &c., shall absent himself from the ship or vessel in which he shall have shipped, without leave of the master or officer commanding on board, and the mate, or other officer having charge of the log-book, shall make an entry therein of the name of such seaman, &c., on the day he shall so absent himself; and if such seaman, &c., shall return to his duty within forty-eight hours, such seaman, &c., shall forfeit three days' pay for every day for which he shall so absent himself, to be deducted out of his wages. But if any seaman, &c. shall absent himself for more than forty-eight hours, at any one time, he shall forfeit all the wages due to him, and all his goods and chattels, which were on board the ship, &c. &c., at the time of his desertion, to the use of the owners of such ship or vessel; and moreover shall be liable to pay to him or them all damages, which he or they may sustain by being obliged to hire other seamen or mariners in his or their place," &c. &c. This section has always been construed to apply to cases of unlawful absence during the voyage, after the vessel has left the home port, at which it commenced; as the second section of the same act has been also held exclusively to apply to such absence at the home port. See Cotel v. Hilliard, 4 Mass. 664. It supposes, therefore, that the voyage is still in transit; and can by no reasonable interpretation extend to any absence after the voyage is ended. Independent of this general ground, which at once, from what has been already stated, disposes of this part of the defence, there is another quite as decisive. The statute manifestly contemplates a distinction between absence without leave and desertion; and it supposes, that the former, if there should be a return to duty within forty-eight hours, would not incur the forfeiture of all antecedent wages by the maritime law; for it would be almost absurd, if such were the legal result, to declare the minor penalty of a forfeiture of three days' pay. It treats absence, therefore, without leave, to be an equivocal act, and not necessarily desertion, animo non revertendi. But, inasmuch as such prolonged absence might endanger the safety of the ship, or the due progress of the voyage, it deems forty-eight hours' absence without leave, to be ipso facto a desertion, and inflicts upon it a total forfeiture of wages. It thus creates a statute desertion, and makes that conclusive evidence of the fact, which would, upon the common principles of the maritime law, be merely presumptive evidence of it. It does not supersede the general doctrine of the maritime law; or repeal it; but merely in a given case applies a particular rule in poenam, leaving the maritime law in all other cases in full efficiency. But, to bring the case within the statute, there must be a strict compliance with all the statute requisites; for, in a case so highly penal, nothing is to be taken by intendment. Now, to work the statute forfeiture, it is made an indispensable condition, that the mate, or other officer having charge of the log-book, should make an entry therein of the name of such seaman, on the day on which he shall so absent himself; and the entry must not merely state his absence, but that he is absent without leave. Abb. Shipp. p. 468, pt. 4, c. 3, § 3, Story's Note (Ed. 1829). The entry on the very day is, therefore, a sine qua non. It is a just and reasonable precaution, to prevent all subsequent fraudulent entries, and all parol evidence of unlawful absences in the progress of the voyage, which may result from after thoughts and contrivances, from personal pique, or from the unavoidable deficiency of positive proof of leave. Whoever is much acquainted with maritime life, has had occasion to know, how many cases of this sort would arise from the common controversies between seamen and officers, if such solemn charges could be set up at any distance of time, without any other proof, than the quickening power of resentment, or the stimulated industry of memory, might

supply by parol. Now, the proof is incontestable, and indeed it is admitted, that the entry of absence without leave in the log-book, was not made until the evening of the fourth day after the asserted absence without leave; and it was then made at the special application of the owner himself. Under such circumstances it is manifest, that it is not a compliance with the statute; and therefore the defence on this point cannot be sustained. Indeed, if the statute were out of the question, I should have thought, that the entry in the log-book, being after the case was put in controversy, post litem motam, would have been inadmissible upon general principles to found a penalty.

Whether the omission to record the entry of desertion in the log-book would have been equally fatal to an enforcement of the forfeiture of the maritime law for desertion, it is not necessary to decide. The present inclination of my opinion is, that it would not be. But, be this as it may, the omission would afford a strong presumption, that there was an express or implied leave of absence, unless the other circumstances of the case positively repudiated it. But, although I cannot pronounce for a forfeiture of wages in this case founded upon any desertion, statutable or maritime; yet I am entirely satisfied, that the absence in this case was without leave, either of the master or owners, and indeed was against the known will, if not the orders, of both. It is, therefore, a case of a criminal disobedience and departure from duty; and the more reprehensible, because it was done by an officer of the ship, who ought to know better, and owes a better example both to the seamen and to his employers. I cannot but feel also, that the evidence establishes, that the absence was the less excusable, because it was under some feelings of resentment for censures passed upon his inattention by the owner; and because it is, in an emphatic manner, the duty of the second mate to attend punctiliously to the discharge of the cargo, to prevent plunderage and damage, and to secure promptitude and care on the part of the persons employed in the unlivery. The excuses set up by him are in a legal point of view wholly unsatisfactory, and are matters of personal feeling, with which the court cannot intermeddle. I follow out the doctrine on this subject in the case of The Baltic Merchant, Edw. Adm. 86, and deem the owner entitled, not merely to a compensation for the loss of the services of the second mate during this period, but for something more, as a just admonition to officers having such high and responsible duties devolved upon them, and designedly departing from them. Of moral turpitude or blame I acquit the libellant, but not of studied omission of duty. The district judge came upon this subject to the same conclusion, which I have arrived at. He inflicted the penalty of a forfeiture of one month's pay for the neglect. If this

were the case of a common seaman, I should do the same. But in the case of an officer, I think the good of the merchants' service requires a somewhat higher forfeiture. If the effect of this would be to deprive the libellant of his costs in this court, I would not upon so slight a difference of opinion change the decree. But, as under no circumstances I should allow the libellant's costs in this court, thinking, as I do, that the appeal was rightly and properly taken, I shall decree a forfeiture of two months' pay, instead of one month's pay, of the mate to be deducted (namely $36), and affirm the decree as to the residue. Each party is to bear his own costs in this court; and the libellant is to be entitled to his costs in the district court. Decree accordingly.