### THE NIGRETIA.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

### No. 47.

SEAMEN ☞21—DESERTION—WHAT CONSTITUTES.

Where the master of a British vessel dropped overboard the original shipping articles which libelants signed in a British port and on arriving in United States libelants refused to sign new articles or to return to the vessel as directed by the master, *held*, that the master was justified in treating libelants as deserters who had forfeited their wages and effects under the British law, and libelants could not recover because the master refused their demand for half wages made thereafter pursuant to Rev. St. 4530 (Comp. St. § 8322).

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Hassan Abdu and others against the steamship Nigretia, her engines, etc., claimed by the Limerick Steamship Company, Limited. From a decree for claimant, libelants appeal. Affirmed.

See, also, 161 C. C. A. 356, 249 Fed. 348.

Silas B. Axtell, of New York City (Vernon Sims Jones, of New York City, of counsel), for appellants.

Kirlin, Woolsey & Hickox, of New York City (L. De Grove Potter, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is a libel by six Arabians, members of the crew of the British steamer Nigretia, to recover wages, one month's extra pay, the value of their effects left on board, and damages. The claimant of the steamer defends on the ground that the libelants were deserters and as such had forfeited their wages and effects under the British law.

April 16, 1916, the libelants signed articles at Cardiff, Wales, for a period of two years. The master, while boarding his ship in the harbor of St. Nazaire, just before sailing for New York on the voyage ending December 1, 1916, dropped the shipping articles and some other papers into the sea. The British Consul at New York instructed him as a precautionary measure to draw up a substitute copy of the original articles and have the crew sign on again before him.

On the morning of December 13th, the day before the vessel sailed, the master took the crew to the Consul's office, where all signed on again except the libelants, who refused to do so unless paid their wages in full to date. The relation of master and seamen continued notwithstanding the loss of the original articles, and the master refused this demand and ordered the libelants to return to the steamer. Instead of doing this, they went to counsel, who advised them to demand half wages under section 4530, U. S. Rev. Stat. (Comp. St. § 8322), which reads:

"Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of

the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned. And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall then be due him, as provided in section forty-five hundred and twenty-nine of the Revised Statutes: Provided further, that notwithstanding any release signed by any seaman under section forty-five hundred and fifty-two of the Revised Statutes any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require: And provided further, that this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement."

Later on the afternoon of the same day the libelants, accompanied by an interpreter, met the master as he was leaving the Custom House after clearing the vessel. There is a dispute as to what occurred; the libelants saying that they demanded half wages, and the master saying that they simply demanded their money and he told them to return to the ship and he would take the matter up and straighten it out. The libelants did not return to the ship but immediately filed this libel and the ship, which was ready to sail, having been released on stipulation, sailed down to the anchorage grounds in the lower harbor of New York, and proceeded on her voyage at 6 o'clock on the morning of the following day.

Judge Manton adopted the account given by the master held that the libelants were deserters, British Merchant Shipping Act of 1894, 57 and 58 Vic. c. 60, pt. II, § 221, and as such had forfeited their claims to wages and to their effects left on board. We concur in this conclusion. It is quite plain that the master was not obliged to waive, and did not waive, his right to treat the libelants as deserters who had terminated all relations with him and the ship by their previous conduct, whichever of the accounts he adopted.

The decree is affirmed, with costs.