THE ITALIER.

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

No. 20.

1. SEAMEN ⬦23—WAGES—PAYMENTS AT INTERMEDIATE PORTS.

Advance wages paid seamen on a foreign ship, who signed in a foreign port, where such payment was legal, are to be deducted in computing the half wages due at an intermediate port, under Seamen's Act, § 4 (Comp. St. § 8322).

2. SEAMEN ⬦4, 21—FORFEITURE OF WAGES—DESERTION—SEAMEN'S ACT.

The offense of desertion in the mercantile marine is not abolished by Seamen's Act, § 4 (Comp. St. § 8322), and such desertion entails a forfeiture of all wages due.

3. SEAMEN ⬦34—"DESERTION."

"Desertion," in the sense of the maritime law, is a quitting of the ship and her service, not only without leave and against the duty of the party, but with an intent not again to return to the ship's duty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Desertion.]

4. SEAMEN ⬦24—WAGES—PART PAYMENT AT INTERMEDIATE PORTS.

A demand is essential to the right to half wages at an intermediate port, under Seamen's Act, § 4 (Comp. St. § 8322), and such demand must be made while the seaman is still in the ship's service.

5. SEAMEN ⬦24—HALF WAGES—PAYMENT AT INTERMEDIATE PORTS.

As seamen on foreign vessels have no rights under Seamen's Act, § 4 (Comp. St. § 8322), until they arrive within a harbor of the United States, the five-day period which must elapse before demand for half wages may be made thereunder begins to run on the arrival of the ship in such harbor.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Constant Janssens and others against the steamship Italier; Vital Delgoffe, claimant. Decree for libelants, and claimant appeals. Reversed.

This action was brought by 11 seamen and firemen on the Belgian steamship Italier, to recover wages and damages for waiting time under R. S. §§ 4529 and 4530, as amended by the Seamen's Act of March 4, 1915 (38 Stat. 1164, 1165, c. 153, §§ 3, 4 [Comp. St. §§ 8320, 8322]).

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libelants had shipped on this Belgian vessel at English and Italian ports for a voyage which had not expired when the Italier put into New York on October 6, 1916. On October 10th, 6 of the libelants caused to be served on the master a written notice as follows: "I hereby demand one-half my wages earned in accordance with section 4530 of the United States Revised Statutes." This notice was dated October 9th, but not served until the day following, for reasons which appear immaterial.

Prior to the service of this paper all the libelants who testified had either left the ship or formed the intention of so doing, and had ceased to work. Some said they went back at night, and to sleep. One man who did not sign the written notice remained aboard until the 10th, when he disappeared without making any proven demand under the statute.

Janssens petitioned for an order allowing proceedings in forma pauperis on October 10th, and on the same day the libel herein was filed, stating that he, "together with the other members of the crew who wished to be joined as colibelants in this action," made demand under section 4530. The verification of the libel then enumerates the names of the 11 libelants. The record contains no evidence that New York was a port where the Italier either loaded or delivered cargo.

The court below gave a decree in favor of some of the libelants (without making any explanation as to why all should not recover, if any did) and directed that in computing the amounts due "the advance notes advanced to the" libelants in England "should not be regarded as a credit to the ship." Claimant appeals.

Kirlin, Woolsey & Hickox, of New York City (L. De Grove Potter and John M. Woolsey, both of New York City, of counsel), for appellant.

L. C. Boehm, of New York City, for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] 1. The Italier is a foreign vessel, and libelants shipped elsewhere than in the United States. Therefore, under The Talus, 248 Fed. 670, 160 C. C. A. 570 (affirmed 248 U. S. 185, 39 Sup. Ct. 84, 63 L. Ed. ——, December 23, 1918) the court below erred in directing that no credit should be given to the ship in respect of advances made to the libelants beyond the boundaries of the United States.

[2] 2. It seems to be thought (judging from the tenor of argument in this and similar causes) that the Seamen's Act of 1915 has abolished the offense of desertion in the mercantile marine. While it is true that arrest for desertion, the bodily return of a deserter to his ship, and generally the holding of a seaman to his shipping contract by physical force, are things of the past, even in respect of foreign vessels so far as the United States is concerned (sections 16–18), desertion is still an offense on American vessels, entailing (inter alia) forfeiture of "all or any part of the wages or emoluments which the [deserter] has then earned" (R. S. § 4596, as amended).

"Desertion" is not defined by any act of Congress. Quite possibly the definition of desertion varies in different countries. This record does not inform us whether Belgium defines desertion in any special way. Although the Belgian law would control, if proven (The Nigretia, 255 Fed. 56, —— C. C. A. ——), we may, in the absence of such evidence, apply the general maritime law.

[3] The definition of desertion "in the sense of the maritime law" is settled, and consists in "a quitting of the ship and her service, not only without leave and against the duty of the party, but with an intent not again to return to the ship's duty." Cloutman v. Tunison, 1 Sumn. 373, Fed. Cas. No. 2,907, where the subsequent cases are collated. Within this definition we have no doubt on the evidence that all the libelants who made demand for half wages deserted before the presentation of such demand.

[4] 3. It seems, also, to be thought that the demand for half wages under R. S. § 4530, as amended, is a ceremony of no moment, and may be made (as it was made in this case) after the seaman leaves his ship (in Judge Story's phrase) animo dereliquendi. Such is not the case. The seaman's is a lawful engagement and its propriety is to be judged primarily by the law of the ship's flag. But Congress has plainly declared that, when foreign vessels are in harbors of the United States, R. S. § 4530, as amended, shall apply to seamen on such vessels. Therefore such seamen are entitled to one-half of the wages earned down to the time of demand made, and such demand must be made within the territorial jurisdiction of the United States, and at a port where said vessel "shall load or deliver cargo."

[5] But no such demand can be made "before the expiration of nor oftener than once in five days." As seamen on foreign vessels have no rights under this statute until they arrive within a harbor of the United States, it is, we think, evident that the five-day period begins to run upon arrival in such harbor. The intimation to the contrary in The Delagoa (D. C.) 244 Fed. 835, is disapproved.

But, since a deserter may forfeit all his wages, it is also a prerequisite to recovery under the statute that there should be wages due him when he makes demand, and there are no wages due to a deserter.

4. The decision below was therefore wholly erroneous in not finding that those libelants to whom awards were made had either deserted before demand made under the statute, or had never made a demand pursuant to the statute.

5. The defense that there was no evidence that New York was for the Italier a port of either loading or discharging, and that on October 10th five days had not elapsed after arrival in the harbor, is not pleaded, but has been argued. Our view of the point, therefore, is stated rather for future guidance than as dispositive of the present cause.

Decree reversed, and cause remanded, with directions to dismiss the libel.