## THE WESTMEATH.

### (Circuit Court of Appeals, Second Circuit. April 16, 1919.)

### No. 25.

CONSTITUTIONAL LAW ⚖275(2)—SEAMEN ⚖1—SEAMEN'S ACT—CONSTITU-
TIONALITY.

> Seamen's Act March 4, 1915, § 4 (Comp. St. § 8322), requiring payment
> to seamen on demand of half wages earned at every port where the
> vessel shall load or deliver cargo, as applied to foreign seamen on
> foreign vessels entering American ports, although subversive of their
> contracts, is constitutional.

Appeal from the District Court of the United States for the Eastern
District of New York.

Suit by Peter Lucas and Gustav Blixt against the steamship West-
meath; J. M. Thompson, claimant. Decree for libelants, and claimant
appeals. Affirmed.

Kirlin, Woolsey & Hickox, of New York City (L. De Grove Potter,
John M. Woolsey, and Peyton Randolph Harris, all of New York City,
of counsel), for appellant.

Silas B. Axtell, of New York City, for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. The legal ground-work of this action is
identical with that of The Italier, 257 Fed. 712, —— C. C. A. ——
(opinion filed herewith).

At a port in Australia and in December, 1915, libelants shipped as
members of the crew of the British steamer Westmeath for a voyage
"not to exceed one year." Before that year expired the Westmeath ar-
rived in the harbor of New York, where she loaded and discharged,
and there the libelants aver they made demand for half wages under
R. S. § 4530, as amended (Comp. St. § 8322). This demand was re-
fused, whereupon this action was brought for full wages, etc.

The libelants had decree below, and as to the facts it is sufficient to
say that the single defense (of desertion) set up in the answer is not
proved. On the contrary, we agree with the District Judge that libel-
ants' case was proved within the statute.

To grant this decree in favor of foreign seamen against a foreign
vessel solely because such vessel, by coming into the harbor of New
York and there loading and discharging, gave to her crew rights en-
tirely contravening those secured or granted to that crew by British
law, is now asserted to be such an interpretation of the Seamen's Act
of March 4, 1915, c. 153, 38 Stat. 1165 (Comp. St. § 8322), as to ren-
der Rev. St. § 4530, as amended, unconstitutional.

That the statute impairs, or rather abrogates, the foreign seaman's
shipping contract, is admitted; but we know of no reason why Con-
gress, if so minded, may not pass such a statute. "It is no answer
(to a plain congressional declaration) to say that it interferes with the
validity of contracts, for no provision of the constitution prohibits Con-

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gress from doing this, as it does the states." Mitchell v. Clark, 110 U. S. 643, 4 Sup. Ct. 170, 28 L. Ed. 279.

It is, however, urged that any interpretation of the act which enables a seaman on a foreign ship to accomplish that which is embodied in the decree appealed from, is violative of the Fifth Amendment, in that it interferes "with the liberty to contract on such terms as may be advisable to the parties to the contract," and is therefore "a deprivation, of liberty without due process of law," and for this reliance is placed upon Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832. In our opinion this very contention was in substance made in Patterson v. The Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002, and there disposed of; and this decision was recently approved in The Talus, 248 U. S. 185, 39 Sup. Ct. 84, 63 L. Ed. —— (December 23, 1918).

The employment and discharge, treatment, status, and punishment of merchant seamen has long been a part of the regulation of water-borne commerce. With the advisability or expediency of declaring all seamen, irrespective of nationality, to have a status, or be entitled to treatment when within a harbor of the United States totally differing from the treatment or status accorded them in every other part of the world, we have no concern, but entertain no doubt of the power of Congress to enact this statute as a commercial regulation.

Decree affirmed, with costs.