## THE LEVI W. OSTRANDER.

(District Court, W. D. Washington, N. D.   July 31, 1921.)

No. 6207.

1. **Seamen ⬤➡21—Leaving of ship before completion of voyage with intent not to return held "desertion."**

The leaving of his ship by a seaman before completion of the voyage, and when the ship was in danger, with intent not to return, and with failure to return, *held* to constitute "desertion."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Desertion (in Maritime Law).]

2. **Seamen ⬤➡21—Payment of wages after desertion held not a waiver of the desertion.**

Deposit by the master with a consul of wages due a seaman after his desertion, or a willingness to have him return, *held* not a waiver of the desertion, where the seaman left willfully, without intention of returning, and did not return.

In Admiralty.   Suit by I. Nitta against the schooner Levi W. Ostrander.   Decree for respondent.

The libelant, a cook, signed shipping articles on January 14, 1920, for a voyage from the port of San Francisco to Durand, South Africa, and to such other ports and places as the master might direct, and back to a final port of discharge.   The following clause appears in the articles:

"Should crew be discharged at any other port than San Francisco, all members of crew who desire to be returned to San Francisco must so declare when signing off these shipping articles, and such members will be furnished transportation and $5 a day subsistance for time en route, without stop-over. Officers shall receive first-class ticket and Pullman sleeper; remainder of crew second-class ticket and sleeper.   In no case will cash be paid in lieu of transportation.   Pacific Coast working rules and conditions to be applied during entire voyage."

The ship's log contains the following:

"June 1.   Durban. I. Nitta drunk.   Supper 13 meals @ $.75 amount of fine or forfeiture.   $9.66 2 days.   $9.75.   I. Nitta left ship in company with other sailors without permission.   Ship cleared customs and ready for sea, causing one day's detention of ship; fine his part of one day's demurrage, $250; one-eighth, $31.25.                                        Ernest Seel, Master.

"V. J. Kustel, Mate."

"August 23.   Sydney.   I. Nitta drunk; fine 2 day pay.   August 24.   Sydney. I. Nitta drunk; fine, 2 day pay.   August 25.   Sydney.   I. Nitta drunk; fine, 2 day pay.   September 1.   New Castle.   I. Nitta drunk; fine 2 day pay.   September 2.   New Castle.   I. Nitta arrested under Foreign Seamen's Act, ashore without leave, by an order from U. S. Consul.   Cook released from jail September 30.   Total, 29 day off pay.   I. Nitta guilty absence without leave, one month in Maitland gaol and expenses.              V. J. Kustel, Mate.

"Ernest Seel, Master."

"Page 9.   Iquiqui Bay, Jan. 7, 1921.   Ballast Ground.   Cook Nitta gave notice he would quit when time was up, Jan. 14.   I warned him ship was in danger of burning and not to make any false move.   No result.   Jan. 9.   Had U. S. consul on board, and he also warned cook to stay by his job and do his duty to the ship.   Cook's plea was his time was up and wanted to be sent home as a passenger.   Consul told him ship was bound home, and also 'port authorities' would not allow him to land.   Jan. 14.   Cook quit 7 p. m.   Jan. 15.   No cook to cook; he was dressed up ready to go ashore, fined 10 days' pay.                                                    A. Guissan, Mate.

"Ernest Seel, Master."

"January 13, 1921. I. Nitta, cook, refused to turn to and demanded his discharge. He was informed by American consul that vessel was still in danger and that port authorities had placed her in the danger zone to prevent mishap to other vessels. Cook refused to work and took his clothes ashore. The American consul refused to pay him off at that time and instructed him to return at once to his vessel, which he refused to do. He appealed to the Japanese consul, who after full investigation advised him to return to his vessel at once. He did not take advice of the consul and was on a continual drunk while in port. After most of the danger had passed, it was agreed to pay him off at this port under consular supervision, and return him to the States. The cook, however, refused to sign his receipts for his balance, and refused to pay his fines, slop chest accounts, etc. The consul informed the captain that, as the cook would not accept his wages and would not sign his discharge, if he was not on board at the time of sailing, that vessel could not be delayed by his action, and that vessel should sail without further notice. The Japanese consul refused to interest himself further in the case, and admitted that the vessel was not at fault. It was the opinion of both the American and Japanese consuls that the cook was a dangerous person to have on board or in the city, and that he was attempting to agitate the balance of the crew. The American consul stated that the action of the cook deserting the vessel when she was in danger warranted a heavy fine.

"Iquiqui, Chile,                                      Ernest Seel, Master."

"(Form No. 33, Consular.) Oath and Declaration of Master to Desertion of Seamen or Mariners. Iquiqui, Chile, Jan. 28, 1921. I, Ernest Seel, master of the ship Levi W. Ostrander, of Seattle, Wash., now lying in the port of Iquiqui, Chile, do hereby make oath, in due form of law, that the seamen or mariners hereinafter named, and who are noted on the crew list of the said vessel as deserters, absconded from the said ship Levi W. Ostrander at the ports or places hereinafter named, without my knowledge or consent, at or about the times hereinafter placed opposite their names respectively. Name, I. Nitta: place, Iquiqui, Chile; time, Jan. 14, 1921. Ernest Seel, Master.

"Subscribed and sworn to before me, C. Innes Brown, American consul, this 26th day of January, 1921. C. Innes Brown, Consul of the United States of America."

Prior to the expiration of the articles the seaman gave notice to the master that he desired his discharge at the end of the period. The ship at the time was in the harbor of Iquiqui, Chili, and in unloading the cargo of coal it was found that the coal was hot and was likely to burn. The ship was directed to be removed to a safety zone by the port commissioner for the safety of docks and ships. The master told the seaman that the ship was on fire, and that he would have to remain with the ship during the distress. On the day the contract expired the seaman went to the American consul and demanded his pay and was refused, and was told by the consul to return to the ship and remain until the danger was over, which the libelant refused to do. Thereafter the master deposited with the consul, upon the advice of the Japanese consul, the sum of $416.43, the amount due after deducting fines and penalties imposed, and the master was advised by the consul to sail without the seaman unless he returned to the ship, and, the seaman failing to return, the vessel sailed on the 28th of January, and libelant was logged a deserter. The claimant contends that, because of the distress of the ship on account of fire and the refusal of the libelant to remain on duty, and the advice of the American consul to remain on board, the conduct of the seaman constituted desertion, and that all wages were forfeited pursuant to law.

Daniel Landon, of Seattle, Wash., for libelant.

Chadwick, McMicken, Ramsey & Rupp, of Seattle, Wash., for respondent.

NETERER, District Judge (after stating the facts as above).    Is the libelant a deserter? is the issue to be determined.    Judge Hough, in The Italier, 257 Fed. 712, 714, 168 C. C. A. 662, 664, says:

"The definition of desertion 'in the sense of the maritime law' is settled, and consists in 'a quitting of the ship and her service, not only without leave and against the duty of the party, but with an intent not again to return to the ship's duty.'    Cloutman v. Tunison, 1 Sumn. 373, Fed. Cas. No. 2,907, where the subsequent cases are collated."

[1] Whether the libelant was a deserter will depend upon his right to leave the ship at the place of anchorage on the expiration of his shipping articles.    Under sections 4511 and 4530, R. S., and sections 8300, 8313, and 8322, Comp. St., and amendments, neither master nor crew can renounce their shipping articles "before the voyage is ended, unless the contrary be expressly stipulated in the contract."    Hamilton et al. v. U. S. (C. C. A.) 268 Fed. 15.    The voyage had not ended.    The ship was on the homeward voyage, the libelant had no right to abandon the ship in distress.    The ship at the time libelant left was not in a place of discharge, and was in distress, and his failure to return constituted desertion, because he entertained no intent to return to the ship.

[2] The deposit with the American consul by the master of the wages due would not constitute a waiver of the desertion, because there was no disposition or intent of the seaman to return; on the contrary, his absence was willful.    The willingness on the part of the master to have the seaman return would not be a waiver of the continued willful absence of the seaman.    The master had a right to deduct from the wages due the fines and penalties imposed for willful misconduct on the part of the seaman.    While consent and agreement to receive the seaman is a waiver of the desertion (Whitton v. The Commerce, Fed. Cas. 17,604), the willingness to have him return did not mitigate against the master on the continued willful absence, and relieve the seaman from the continued desertion.

The conduct of the libelant, as disclosed in this record, is very discreditable, and the penalties provided by law are merited, as appears from the record in this case, and should be carefully considered, and upon such consideration I think the libel must be dimissed.