## THE M. S. ELLIOTT.
## MONROE v. HERNANDE et al.

(Circuit Court of Appeals, Fourth Circuit. December 28, 1921.)

### No. 1909.

Seamen ⊜⟶21—Right to wages held forfeited by "desertion."

On a libel for seamen's wages, evidence *held* to show that libelants were deserters from the ship, and had forfeited their wages under Rev. St. § 4596, as amended (Comp. St. § 8380); "desertion" being a quitting of the ship and her service, not only without leave and against the duty of the party, but with an intent not again to return to the ship's duty.

[Ed. Note.—For other definitions. see Words and Phrases, First and Second Series, Desertion (in Maritime Law).]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Libel by Jose Hernande and others against James P. Monroe, as master of the steamship M. S. Elliott. Decree for libelants, and respondent appeals. Reversed and remanded, with instructions to dismiss.

George L. Buist, of Charleston, S. C., and L. De Grove Potter, of New York City (Kirlin, Woolsey, Campbell, Hickok & Keating, of New York City, and Buist & Buist, of Charleston, S. C., on the brief), for appellant.

Harry Simonhoff, of Charleston, S. C., for appellees.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

KNAPP, Circuit Judge. In this suit for seamen's wages the master set up the defense of desertion. The facts appear to be these: On the 28th of April, 1921, at the port of New York, the crew of the steamship M. S. Elliott signed for coastwise service thereon in various capacities for a period "not exceeding 12 calendar months." Shortly afterwards the ship proceeded to Texas City, Tex., and from that port to the port of Charleston, S. C., where she arrived on the morning of the 11th of May. A seaman's strike was in progress, and while the ship was docking a motorboat came along, manned by strikers, who had some conversation with the crew, though what passed between them does not clearly appear. During that day, however, at different times, most of the men left the ship, taking their belongings with them. On the following day 16 of them brought this libel to recover the full wages earned by them up to that time, on the ground that they had

demanded payment of one-half the wages then due them, as provided in section 4530 of the Revised Statutes, as amended June 5, 1920 (41 Stat. 1006), and that such demand had been refused.

The trial court found that 2 of the libelants, upon arrival of the ship at Charleston, had demanded half wages and been refused, and were therefore entitled to full wages, under the terms of the amended section. As to the others the finding was as follows:

"No sufficient demand on the captain for half wages is proven on behalf of any other libelant. It does appear in the testimony that all the libelants, on the day of the arrival of the ship at the Port of Charleston, left the ship without leave and without sufficient reason, and have not returned for service. Under the circumstances of the case, it does not appear to the court that it calls for the enforcement upon them of the penalty of desertion as provided by section 4596 of the Revised Statutes, as amended; but it is a case falling under the second division, where they left the vessel without leave and without sufficient reason, and they therefore should forfeit each two days' pay."

The decree entered accordingly refers to an agreement with certain of the libelants and therefore includes but 10 of them, to each of whom is awarded half pay, less a deduction of $3 for absence. As to only 6 of the 10, named in the notice, this appeal is taken, and the sole question here is whether these 6 were guilty of desertion.

Without citing other authorities, we may accept the definition of desertion, quoted with approval in The Italier, 257 Fed. 712, 714, 168 C. C. A. 662, 664, as "a quitting of the ship and her service, not only without leave and against the duty of the party, but with an intent not again to return to the ship's duty." The trial court found, on testimony wholly convincing, that none of the 6 had demanded half pay, that all of them left the ship without leave and without sufficient reason, and that they had not returned for service; and we find no evidence that they intended to return. On the contrary, the circumstances under which they left, taking their belongings with them, indicate unmistakably, as we think, that they deliberately and purposely abandoned the service which they had agreed to perform. In point of fact, none of them did return, or offer to return, or show the slightest disposition to return. Only 2 of the 6 were witnesses at the trial; both of them admitted that they left the ship with the intention of not returning, and nothing appears from which a different intention on the part of the other four can be inferred. In short, there is no testimony which disputes or discredits the statement of the master that the men told him they were leaving permanently, although he admonished them not to do so and warned them of the consequences. We are of opinion that they must be deemed deserters. The Nigretia, 255 Fed. 56, 166 C. C. A. 384; The Italier, 257 Fed. 713, 168 C. C. A. 662.

As the penalty for desertion is the "forfeiture * * * of all or any part of the wages or emoluments which he has then earned" (Revised Statutes, § 4596, as amended [Comp. St. § 8380]), the decree will be reversed, and the cause remanded, with instructions to dismiss the libel as to the 6 libelants named in the notice of appeal.

Reversed.