## FLYNN v. WATERMAN S. S. CORPORA-TION.

### No. 16125.

District Court, E. D. New York.

Feb. 9, 1942.

Silas B. Axtell, of New York City (Dominick Blasi, of Brooklyn, N. Y., of counsel), for libellant.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Prizer, of New York City, of counsel), for respondent.

INCH, District Judge.

Libellant, a young man twenty-five years old and a seaman of considerable experience, has brought this suit against the respondent, Waterman Steamship Corporation.

On or about June 11, 1940, at the port of New York, libellant duly signed shipping articles and became a member of the crew, in the capacity of wiper in the engine room, of the steamship Raphael Semmes a vessel owned by respondent. The vessel was to proceed to the Far East and back, possibly via the Suez Canal, to New York.

The wages of libellant were to be $70, per month and found, plus a specific war bonus when the vessel reached certain designated ports all of which were clearly specified in the shipping articles duly agreed to by libellant as well as by the other members of the crew.

Honolulu, Hawaii, was not a port where any bonus was directly or indirectly contemplated. At this port no cargo was taken on or discharged and the only purpose of stopping there, for a few hours, was made necessary by refueling. The crew of the steamship deserted at Honolulu in circumstances which will be briefly stated later and libellant was not paid for the voyage from New York to Honolulu. Nevertheless, libellant now sues the respondent for his wages on the ground that he is entitled to them, together with all the other emoluments covered by the agreement, plus the penalty allowed by law in certain circumstances.

The libel contains three causes of action. The first cause of action in substance charges that he "duly performed his services and all of the terms and conditions of the articles of agreement on his part and was ready and willing to continue to render services on board said vessel pursuant thereto but was left by the vessel and the officers thereof at the port of Honolulu, Hawaii, while it was there in July 1940". (Paragraph Fifth of the libel).

It then goes on to allege that by reason of the unlawful breach of contract and articles of agreement libellant was entitled to his earned wages, his wages to the end of the voyage, his war bonus and his lodging and keep at Hawaii. The steamship Raphael Semmes returned to the port of New York December 4, 1940.

The actual amount of wages on the voyage from New York to Honolulu (June 11, 1940 to July 16, 1940 one month, six days, at $70, a month), was $84, from this is deducted social security tax $1.20, advances at Newport News and Honolulu $10, slop chest $6.49, making a total of $17.69, leaving the sum due of $66.31, plus of course the other items and penalty claimed for the remainder of the voyage which libellant did not take and the

cost of his lodgings prior to his ultimate return to this country which did not occur until October 11, 1940.

The second cause of action relates to the recovery of these wages amounting to $66.31 together with wages plus the penalty provided in Section 4529, U.S. Revised Statutes, 46 U.S.C.A. § 596.

The third cause of action has been withdrawn. It related to libellant's clothing and personal effects which he left on the Raphael Semmes at Honolulu, but which he received back later when he returned to New York.

The answer of the respondent admits that in June, 1940, libellant joined the SS. Raphael Semmes at New York in the capacity of a wiper and signed shipping articles providing for the payment of wages at $70, per month with a bonus, etc., and that libellant did serve on board the said steamship until she touched at Honolulu on July 16, 1940. The respondent then proceeds to answer that the vessel when she left New York was bound for far eastern ports, that she called at Honolulu on July 16, 1940, for the purpose of fueling only and with the intention of remaining there for only a few hours. That libellant, together with the other members of the crew, deserted the vessel and went ashore without leave and failed to return at the posted time for sailing and further neglected and refused without reasonable cause to join the said Raphael Semmes and to proceed to sea in her and the Raphael Semmes was obliged to remain at Honolulu for many days in consequence of this desertion of the libellant and the other members of the crew and their refusal to join the vessel and to proceed to sea. That by such desertion libellant forfeited his rights to the said wages, etc. That by reason of the absence of libellant and other members of the crew without leave within twenty-four hours of the vessel's sailing from Honolulu, respondent was obliged to incur the expense of detention, the expense of hiring substitute members of the crew at the port of San Francisco, paying their transportation expenses from San Francisco to Honolulu, and subsequently paying their transportation expenses from New York to San Francisco.

The amount in suit is small, nevertheless, an Admiralty court is zealous, regardless of extent, to protect seamen from overreaching conduct on the part of those by whom they are employed on a ship. On the other hand, the law requires a seaman to duly perform his signed agreement.

The issue therefore presented must be determined by finding whether the facts, and fair inferences therefrom, show that libellant did desert his ship at Honolulu. This is so for the reason that Congress pursuant to the Act of June 7, 1872, has provided that any seaman, such as libellant, by desertion of his ship, forfeits "all or any part of the wages or emoluments which he has then earned." 46 U.S.C.A. § 701, R.S. § 4956.

Such desertion must be a voluntary act on the part of the seaman and it has been defined as consisting in the abandonment of duty by quitting the ship before the termination of the engagement without justification and with the intention of not returning. The City of Norwich, 2 Cir., 279 F. 687, L.R.A.1918C, 795; The Nigretia, 2 Cir., 255 F. 56.

There is no proof whatever that there was any arbitrary and unfair conduct on the part of the respondent or any of the officers of the ship. On the contrary although the captain would have been justified in acting more severely, the proof shows that he acted with the utmost leniency and patience during the days that his ship was held up at Honolulu.

No sympathy need be wasted on this young seaman, who knew exactly what he was doing and who was at all the times mentioned, according to his testimony, entirely sober when he left the ship and stayed away for four days, a condition, which for his sake, I will assume, although there is testimony that after he deserted the ship and went ashore at Honolulu, he returned, on one occasion, quite drunk. If there is any sympathy to be extended it should be given to Captain Blackwood, whose ship arrived at Honolulu, about noon of July 16, 1940, expecting to refuel in a few hours and leave about eight o'clock that night, yet, because of this desertion by her crew she was compelled to lie idle from July 16, to July 29, awaiting the arrival of a new crew from San Francisco, and to the respondent, on which was imposed by this delay and necessity an expense of thousands of dollars.

Libellant not only now seeks to recover his wages and penalty but a bonus for risks which he did not incur.

Captain Blackwood has been going to sea forty years. He is an experienced

master. The crew which signed on at New York on or about June 11, was a union crew and in accordance with their procedure the crew selected representatives called "delegates" who acted as spokesmen for the crew. There were three of these delegates, one from the deck department for sailors, one for the steward department for cooks and one from the engine room department.

When the ship was at sea and a few hours from Honolulu, the crew apparently held a meeting at which, of course, none of the officers of the ship was present nor invited. The three delegates above mentioned then reported to Captain Blackwood that they had held such a meeting and demanded more bonus than that to which the crew had agreed when they signed up. The reason given for the unjustifiable demand was that they had heard certain things over the radio about conditions in the Far East and did not think it was safe. The captain replied that he could not grant any such demand, but would take it up at once with the office of the company at Honolulu when the ship arrived there. The ship arrived shortly, about noon of July 16, 1940. The captain then consulted with the office of the respondent and the demand of the delegates was rejected, whereupon all of the crew, including libellant, left the ship excepting several firemen who kept the fires going that night but they also left the following day.

As soon as the ship tied up the crew had insisted on going ashore, but no shore leave was granted. Its sailing date for eight o'clock that night had been duly posted. They likewise demanded that they draw down some of their pay. The agent of the respondent, when he came aboard, advised the advancement of $5, each and this was done. Thereupon the crew regardless of the fact no shore leave had been granted, left the ship except the said firemen. The chosen delegates of the crew informed the captain that if the demand they had made was not granted the crew was going ashore and hold up the vessel until it was granted.

There is no difficulty in finding that this high-handed action by the delegates and the crew they represented resulted in a desertion of the ship by the crew and right here it should fairly be said that counsel for libellant, a greater part of whose professional life has been devoted to seamen and

their rights, had the following to say at the taking of the depositions of Captain Blackwood and others on December 9, 1940.

Mr. Axtell: "I might say for the record that I regard the conduct of that crew as reprehensible and unjustified, contrary to law and everything else and for many years I have done everything I could to prevent that sort of thing happening, much to my own personal disadvantage, but I am here for this libellant because he has convinced me that he took a position against this crew and refused to co-operate with them in any way and therefore I wanted it understood distinctly we are not trying to defend what this crew did". (Respondent's Exhibit A. Depositions).

It will be seen therefore that there is no difficulty in finding generally that the crew deserted and thereby forfeited its right to pay and emoluments, but the claim is made that this particular libellant did not desert, although he left the ship with the rest of the crew on July 16, 1940.

I have carefully considered all of the testimony, which consists of the oral testimony of libellant at the trial, as well as that contained in the depositions offered in evidence, and I fail to find any support for this exception of libellant. On the contrary, his conduct indicates that he voluntarily quit the ship and his duty as a member of the crew when he unlawfully left it upon her arrival at Honolulu on July 16, 1940.

I am assuming that he is telling the truth that he always knew what he was doing and was not intoxicated to the extent that he didn't know. So he has no excuse on this score. To be sure he testified that he didn't agree with this strike but his subsequent conduct "speaks so loud that I have difficulty in hearing such protest".

According to Captain Blackwood and the other officers, which is all to the same effect, all the crew including libellant went ashore on July 16, 1940. The rejection of the demand was not fully determined until the 17th. When this rejection became known the firemen left the ship in sympathy with the remainder of the crew and said they would not return until their demand was granted. Nevertheless, passes to and fro to the ship were made available apparently in the hope that the crew would come to their senses and return to the ship. Accordingly, from time to time some members of the crew did come aboard but came

and left as they pleased and no attempt was made by any of them to return to duty. Libellant did not show up at all for four days. There was an absolute failure to report to duty by any of the crew on the 17th, 18th and 19th. On the 20th and 21st, three members of the crew did come back and duly reported for duty and their penalty was lifted. On the 21st two more members also returned and reported on board for duty and their penalty was waived. Of the crew of nineteen members only these five ever reported for duty and were reinstated as members of the crew. Libellant was not among them.

The ship was compelled to remain tied up until July 29, when the new crew from San Francisco arrived and took over, then she sailed. During this long period it is plain from the testimony that any of these strikers could have come back on board, reported for duty and gone to work, but none, except as stated, did so.

What then is the situation shown by proof in regard to this libellant who protests that he did not intend to quit the service of the ship? There is no proof that he ever asked to be taken back during all this time.

In order to give this libellant every consideration because of his counsel's suggestion that he may have quit the ship against his will on account of the wrongful demand of his delegates and that he subsequently returned and asked to be taken back, I have carefully considered the testimony of the officers of the ship as well as libellant's own testimony closely relating to this alleged return. Briefly I find the following occurred.

The ship as we have seen reached Honolulu, about noon on July 16, 1940. It was to sail at eight o'clock that night and this notice was duly posted. No shore leave was granted but, nevertheless, in accordance with the unlawful demand of the delegates for more bonus all the crew except several firemen left the ship. Libellant was sober and left with the crew. According to his own testimony he did not appear at all until four days afterward towards evening, on July 20th. He testified as follows: "I finally got fed up with the men that were supposed to be representing me". Towards evening he met an acquaintance, O'Malley, and with him went on board for a few hours, then O'Malley and he went ashore and then they came back about 11 o'clock. Libellant then asked for a pass to go ashore. This was refused. Apparently libellant was intoxicated. He admits "I had been drinking a little that evening". In spite of all this he nevertheless left the ship. There is no proof whatever that, at any time in this social visit to the ship with his friend O'Malley, who was an oiler and a member of the new crew that had been assembled, he ever approached any of the officers and requested to be taken back as a member of the crew or "to turn-to".

On the contrary he left the ship that night of July 20, 1940, and there is no credible proof that he was seen again on the ship or at any time thereafter ever asked to be restored to his former position as a member of the crew. The last seen of libellant was on this late-at-night escapade of July 20, and although the ship remained at the dock for nine days longer, nothing was seen or heard of libellant. There is testimony that the position of wiper was not filled until shortly before the vessel sailed on the 29th, and that a wiper was then engaged from Honolulu to take libellant's place.

It is plain from the above that libellant was sober and knew exactly what he was doing when with the rest of the crew he followed his delegates off the ship on the 16th of July and that, until July 20, when he found that the delegates were unsuccessful in this "hold up", and he became "fed up", his intention had been to quit the ship with no intention of returning until the unlawful demand had been granted. Thereafter he did not do what he must have known five other strikers had done, seek reinstatement and go to work, on the contrary he continued to do nothing on which any different intention than that previously held by him can be based.

So far as the libellant is concerned he plainly deserted the ship on July 16, 1940, and this desertion continued until the ship sailed on July 29, 1940. He therefore is not entitled to recover.

This disposes of the issue but it should also be said that there is no substance in libellant's claim based on Section 4529, R.S. 46 U.S.C.A. § 596, which relates to a penalty, for the reason that the refusal to pay libellant's wages was amply justified and there is an entire absence of proof that respondent's refusal was without sufficient cause. The Thomas Tracy, 2 Cir., 24 F.2d 372.

In my opinion libellant is not entitled to recover anything, but in view of the circumstances, the libel should be dismissed without cost.